[No. B075756. Second Dist., Div. Three. Mar. 29, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
CARL FRANK ALLEN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976(b) and 976.1, this opinion is certified for publication with the exception of parts IV 1. and IV 2. b., c., and d.

**COUNSEL**

Murray A. Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Kenneth C. Byrne, Alison Braun and James William Bilderback II, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KITCHING, J.—**

I

INTRODUCTION

Although the statute does not define the term, Penal Code section 422 requires that the defendant's threat cause the victim to be in "sustained fear."

In this case, the defendant threatened to kill the victim and her daughter while pointing a gun at the victim. The victim telephoned the police, who arrested the defendant in approximately 15 minutes. We hold that in these circumstances, the victim's fear lasted long enough to satisfy the statutory element of "sustained fear."

Carl Frank Allen (Allen) appeals a judgment entered following a trial by the court resulting in Allen's conviction for two counts of terrorist threats (Pen. Code, § 422), three counts of stalking (Pen. Code, § 646.9, subd. (b)), first degree residential burglary (Pen. Code, § 459), and assault likely to produce great bodily injury and with a deadly weapon (Pen. Code, § 245, subd. (a)(1)).

The trial court sentenced Allen as follows. Count two (terrorist threats), to the high term of three years for the base term, plus four years pursuant to Penal Code section 12022.5.[1] Counts three, six, and seven (stalking), to one-third the midterm of two years, for a total of eight months as to each count, with execution of sentence stayed as to each count pursuant to section 654. Count four (first degree residential burglary), to one-third the midterm of four years, to run consecutive to count two. Count five (terrorist threats), to one-third the midterm of two years, to run consecutive to count two. Count eight (assault likely to produce great bodily injury and with a deadly weapon), to one-third the midterm of three years, to run consecutive to count two. The total sentence was 10 years, less 225 days of preconviction credits.

As to counts three, six, and seven, we modify and correct the judgment to reflect a conviction for violating section 646.9, subdivision (a). Execution of sentence for these three counts remains stayed pursuant to section 654. In all other respects we affirm the judgment of conviction.

II

FACTS

After dating for two or three years, Allen and Barbara Irons broke up before January 12, 1992. On that date about 8 p.m., Irons was on her way to a friend's house near 105th Street and Compton Avenue. Suddenly Allen was "in Irons's face," arguing with her, saying he was tired of her playing games with him. Carrying two screwdrivers, one in each hand, with the ends pointed at Irons, Allen came at her, gripping the screwdrivers and lunging at Irons. The tips of the screwdrivers came within approximately one foot of Irons's body. Irons continued to back away. A man named Joe Gray, also

---

[1] Unless otherwise specified, all references to statutes in this opinion will refer to the California Penal Code.

known as "Joe Boy," heard the argument and intervened. Irons got behind Joe Boy, who walked her to her mother's house. The incident left her paranoid and afraid Allen would do something to her.

On May 8, 1992, Irons again saw Allen about 8 or 9 p.m. at her Van Nuys apartment. She had never given him her address since moving there five or six months earlier. Allen was outside her second floor apartment, on a porch or walkway. Peeking out from inside, Irons saw Allen take his coat, wrap it around his hand, and break her front window, which was closed and locked and covered by a curtain. Then he ran away.

On May 19, 1992, Irons again saw Allen, inside her Van Nuys apartment. A man named "Treetop" was downstairs working on his car. Irons had been taking a shower, and then saw Allen at her bathroom door. Allen hit her, injuring Irons with a gash over her right eyebrow, which bled. Allen then fled. Crying and screaming, Irons ran behind him and tried to have Treetop stop Allen, but Allen escaped. After Treetop took Irons to her mother's house at 106th and Compton Avenue, Irons made a police report of the incident.

Later that evening, at her mother's house, Irons again saw Allen. Irons's mother was home, but asleep. Allen was outside the house. As he moved back and forth, Allen loudly described how he had torn up Irons's clothing and apartment, and threatened to throw a cocktail bomb at her mother's house. Irons interpreted this reference to mean that Allen intended to put gasoline in a bottle, light it, and throw it inside so it would blow up. She believed Allen might do that. Allen's statements frightened Irons, who made her son get on the floor because she was afraid Allen was going to throw a bomb inside the house.

The same evening Irons returned to her Van Nuys apartment. Severely vandalized, it had holes in every wall. A sink was pulled out of the wall, and faucets were pulled out of the sink. The sliding door on her front room was broken, as were her bedroom set and dresser. Jars were thrown everywhere. All her clothes were gone.

On July 24, 1992, Irons was at the house of a friend, Fernita Ephrian, near her mother's house. About 1 p.m., Irons, who had been sleeping on a couch, woke up to find Allen beating on her in the front room. Irons hit back. Ephrian, emerging from the bathroom after a shower, heard Irons screaming. Ephrian knew defendant Allen; they grew up together. She saw Allen hitting Irons, who although she was sitting down, fought back, kicking, screaming, and hitting Allen. When Ephrian grabbed a knife, Allen stopped hitting

Irons. Irons grabbed some iron implements from the stove to use as weapons to hit Allen with, but Allen had already run out the front door. Irons was injured; her face was swollen and her eye was sticking out. The incident left her feeling paranoid and afraid for her life; she still felt that way at the time of trial. Ephrian had not given Allen permission to be inside her apartment that day.

Irons filed police reports on all of these incidents.

At 8 or 9 a.m. on October 25, 1992, Irons's mother, Shirley Williams, saw defendant Allen outside her home as she was picking grass out of a flower bed. Riding a bicycle, Allen came and went about four times, returning about midday. Williams saw him talking to a neighbor named Charles near Williams's back door. Williams approached the door. Allen used profanity first and then said, "I'm gonna kill you. I'm gonna kill you and your daughter." As he said this, Allen took an eight- or nine-inch black handgun from his trousers and pointed it at Williams, his arm extended and the weapon pointed at her. Shaking and in fear, Williams called 911. She had called the police several times before regarding Allen. Allen left before the police arrived, but 15 minutes later Williams saw the police had taken Allen into custody. She identified Allen for the police at a location less than a block from her house. Williams testified that she had called the police to report earlier incidents involving Allen.

Admitted as People's exhibit 1 was a certified docket computer printout of a case (People v. Allen (Super. Ct. L.A. County, 1990, No. 90-R-31374)) showing Allen's misdemeanor conviction on April 9, 1991, in Los Angeles for assault with a deadly weapon in violation of section 245, subdivision (a)(1). As a condition of probation, Allen was ordered to stay away from and not annoy, harass or molest any person or witness involved in the prosecution, especially Barbara Irons. Protective orders signed as a condition of probation prevented Allen from having contact with or disturbing the peace of Irons, required him to stay away from her and ordered him not to commit a similar offense.

THE DEFENSE

Allen testified in his own behalf as follows: On January 12, 1992, Irons approached Allen in a parking lot as he talked with another woman. Irons carried a screwdriver, which Allen took away from her. He denied lunging at Irons with the screwdriver.

Allen denied that on May 19, 1992, he threatened to cocktail bomb the house of Irons's mother. He denied he threatened Irons.

As to the July 24, 1992, incident, Allen testified he had known Fernita Ephrian a long time and had visited her apartment many times. On July 24, he knocked on Ephrian's closed door. Irons let him in and asked for some cash to "buy a rock." Allen's refusal angered Irons, who stuck Allen with a knife. He hit her back—"I tapped her on the arm"—and left.

As to the October 25, 1992, incident, Allen denied pointing a gun at Shirley Williams.

Allen testified that the ongoing problem between himself and Irons was due to Irons's drug use. Irons wanted money and Allen gave it to her. When he refused on one occasion, Irons became angry and cut him across the lip. He hit her back.

Allen lived in Irons's Van Nuys apartment for three months, although he had moved out before the damage to the apartment occurred. May 8, 1992, Allen arrived to pick up some of his clothing. The window to Irons's apartment broke because Irons herself threw a flower pot at Allen and he ducked.

### III

### ISSUES

Defendant claims on appeal that:

1. The convictions on counts two and five should be reversed because section 422 is unconstitutionally overbroad;

2. The evidence is insufficient to sustain a conviction for violating section 422 on count two because there was no showing of Shirley Williams's sustained fear;

3. The evidence is insufficient to sustain a conviction for violating section 422 in count five because there was no showing that the defendant made a terrorist threat;

4. The evidence is insufficient to sustain a conviction in counts three, six, and seven because there was no showing that defendant violated a temporary restraining order or injunction as described in section 646.9, subdivision (b).

5. The evidence is insufficient to sustain a conviction for count seven because there was no showing of defendant's repeated following or harassment of Irons as required by section 646.9, subdivisions (a) and (b); and

6. The evidence is insufficient to sustain a conviction for count four because there was no showing of defendant's intent to commit a felony when he entered Ephrian's apartment.

IV

DISCUSSION

1. *Constitutionality of Section 422**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2. *Sufficiency of the Evidence*

a. *Count Two: "Sustained Fear" and Section 422*

Defendant claims on appeal that the evidence was not sufficient to sustain a conviction for count two. Because the police arrested him within 15 minutes, defendant argues that there was no showing that the victim, Shirley Williams, experienced the "sustained fear" required by section 422.[5]

Pursuant to the substantial evidence rule (*People* v. *Thomas* (1992) 2 Cal.4th 489, 514 [7 Cal.Rptr.2d 199, 828 P.2d 101]), we review Williams's testimony concerning the October 25, 1992, threats. Williams, the mother of Barbara Irons, knew Allen had formerly been her daughter's boyfriend. She had called the police about Allen on prior occasions. On October 25, 1992, Williams had seen Allen around her house earlier in the morning; Allen had left and returned, and Williams had seen him four times. About 12:30 p.m., riding a bicycle, Allen stopped in front of Williams's back door and had a conversation with a neighbor. Williams came up to the door. Allen turned around and talked to Williams. First he used profanity. Then he declared: "I'm gonna kill you. I'm gonna kill you and your daughter." As he spoke he

---

*See footnote, *ante*, page 1149.

[5]Section 422 states: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison. [¶] For the purposes of this section, 'immediate family' means any spouse, whether by marriage or not, parent, child, any person related by consanguinity or affinity within the second degree, or any other person who regularly resides in the household, or who, within the prior six months, regularly resided in the household."

took a black, eight- or nine-inch gun from his trousers and pointed it at Williams, in front of her chest, with his arm extended. Shaking, Williams felt fear because Allen had been coming by her house and peeking in her windows. Allen left the scene. Williams called the police, who arrested Allen within "about fifteen minutes or so."

Section 422 requires the person threatened "reasonably to be in sustained fear for his or her own safety [.]" The prosecution must prove that the defendant had the specific intent that his statement would be taken as a threat, whether or not he actually intended to carry it out. Besides requiring this showing of defendant's mental element, the statute also requires proof of a mental element in the victim. (*People* v. *Garrett* (1994) 30 Cal.App.4th 962, 966 [36 Cal.Rptr.2d 33]; see also *People* v. *Salvato* (1991) 234 Cal.App.3d 872, 883 [285 Cal.Rptr. 837]; cf. section 76, many of whose elements resemble those of section 422 but which lacks the element of "sustained" fear.) The statute, however, does not define "sustained" fear.

■ Defining the word "sustained" by its opposites, we find that it means a period of time that extends beyond what is momentary, fleeting, or transitory. Williams knew that Allen had made a practice of looking inside her home, and had reported Allen's conduct to the police on previous occasions. The victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear. (*People* v. *Garrett, supra,* 30 Cal.App.4th 962, 967.) ■ Fifteen minutes of fear of a defendant who is armed, mobile, and at large, and who has threatened to kill the victim and her daughter, is more than sufficient to constitute "sustained" fear for purposes of this element of section 422.[6]

We conclude that substantial evidence supports Allen's conviction for count two.

b.-d.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[6]In the admittedly different context of the element of premeditation and deliberation required for homicide, no specific minimum time is required; the test is not the duration of time so much as the extent of the reflection; thoughts may follow one another with rapidity and a defendant may arrive at calculated judgment quickly. (*People* v. *Kelly* (1990) 51 Cal.3d 931, 956 [275 Cal.Rptr. 160, 800 P.2d 516].) Regarding the special circumstances of intentional killing of the victim while lying in wait (Pen. Code, § 190.2, subd. (a)(15)), no minimum time period is required, only a period "not insubstantial." (*People* v. *Edwards* (1991) 54 Cal.3d 787, 823 [1 Cal.Rptr.2d 696, 819 P.2d 436].)

*See footnote, *ante,* page 1149.

## V

### DISPOSITION

The sentence imposed for three counts of violating section 646.9, subdivision (b) is vacated, the judgment of conviction is modified to reflect a conviction in counts three, six, and seven for section 646.9, subdivision (a), and the judgment is further modified by imposing the misdemeanor sentence for the three section 646.9, subdivision (a) counts, execution of which sentence is stayed pursuant to section 654. In all other respects the judgment of conviction is affirmed.

Klein, P. J., and Collins, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied June 14, 1995.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.