Filed 11/19/14  P. v. Larsen CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CREEK SONDERHEDE LARSEN,<br><br>    Defendant and Appellant. | G048829<br><br>(Super. Ct. No. 12HF1610)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, David A. Hoffer, Judge.  Affirmed.

Sarita Ordonez, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

Creek Sonderhede Larsen appeals from a judgment after a jury convicted him of making a criminal threat and brandishing a deadly weapon.  Larsen argues insufficient evidence supports his conviction for making a criminal threat.  We disagree and affirm the judgment.

FACTS

One late June evening, 18-year-old Jacob Fioretto and 15-year-old Lauren A. were smoking in Lauren's backyard, which was about 15-to-20-feet wide and was enclosed by a five-foot high cement wall.  They had met recently.  Lauren's mother and her boyfriend were asleep upstairs.  When Lauren and Fioretto went inside, Fioretto saw Larsen, who he understood to be Lauren's ex-boyfriend, crouched on top of the backyard wall with a knife in his hand.  Two days earlier, Larsen sent Fioretto a message on Facebook stating, "'I'll fucking kill you if you touch Lauren.'"  Fioretto knew Larsen had previously stabbed or cut someone.  Fioretto and Lauren went back outside.

Larsen angrily asked Fioretto, "'Did you just kiss her?'"  Larsen jumped off the wall into the backyard.  Larsen asked Fioretto, "Why are you with my girlfriend?"  Lauren stated, "I'm not your girlfriend."  Fioretto anxiously asked Larsen, "Can we talk about this?"  Larsen said, "'You want to talk about this?  I'm going to fucking kill you.'"

Larsen grabbed Fioretto's shoulder with his left hand and jabbed the knife, which had an eight-to-12-inch blade, at his stomach.  Fioretto was scared and jumped back, while Lauren stepped between them and pushed Larsen away.  Lauren said, "'You're not really going to stab'" Fioretto, and Larsen replied, "'Oh, you don't think I'll stab anybody.'"  As Fioretto ran inside, Larsen said, "'Don't worry, fucker.  You're going to die.'"  Fioretto called his friend to pick him up because he was scared to walk home, but the friend could not help him.  Fioretto got Larsen's telephone number from Lauren.  He sent a text message to Larsen telling him he would stay away from Lauren and asking Larsen not to hurt him.  Larsen answered he was going to wait in the bushes and kill Fioretto at night.

2

That same night, Ryan Drost, who lived in a house between Lauren's and Fioretto's houses heard a noise in his backyard. Drost went outside and walked around the yard. Near the end of his yard, a man emerged from the bushes. When Drost yelled at the man, the man slashed Drost with a knife across his abdomen. Drost ran inside and called 911, and the man fled.

Before midnight, Fioretto left Lauren's house to walk home. He took a "back route" to avoid Larsen. Not far from Lauren's house, Fioretto thought he saw someone hiding in the bushes, but it was dark and he could not determine who it was. He ran to a nearby fire station where he told the firefighters someone tried to kill him. The firefighters called 911.

Orange County Sheriff's Deputy Corey Mayer responded to the fire station and spoke with Fioretto. Fioretto told Mayer that Larsen arrived at Lauren's house, referred to her as his girlfriend, and demanded to know why Fioretto was with her. Fioretto told Mayer that Lauren said she was not Larsen's girlfriend, and he asked Larsen if they could discuss the situation. Fioretto said Larsen stated, "You want to talk about this? I'm going to fucking kill you[.]" Fioretto stated Larsen grabbed him by the shoulder and thrust the knife at Fioretto's stomach. Fioretto said Lauren's parents turned on the light in their bedroom, which prompted Larsen to leave, but not before he said, "'Don't worry, fucker. You're going to die.'"

The following day, sheriffs deputies searched Larsen's house and found a hunting knife in a dog crate in his bedroom. Orange County Sheriff's investigator Adam Koliha advised Larsen of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. Larsen admitted he went to Lauren's house and was angry because he saw her kissing Fioretto, but he initially denied having a knife with him. Larsen admitted he threatened to kill Fioretto but claimed he did not go into Lauren's backyard; he propped himself on the wall the entire time. He admitted Fioretto sent him text messages but said he deleted them. Larsen eventually admitted he had a knife when he went to Lauren's house. He

3

took the knife out of the sheath only to scare Fioretto. Larsen admitted he told Fioretto to stay away from Lauren or "he was going to kill him." He denied stabbing Drost.

An amended information charged Larsen with making a criminal threat against Fioretto (Pen. Code, § 422)[1] (count 1), aggravated assault against Drost (§ 245, subd. (a)(1)) (count 2), and misdemeanor brandishing a deadly weapon against Fioretto (§ 417, subd. (a)(1)). The information alleged Larsen personally used a deadly weapon as to count 1. The information also alleged Larsen suffered a prior serious and violent felony juvenile adjudication (§§ 667, subds. (d) & (e)(1), 1170.12, subds. (b) & (c)(1)).

At trial, Fioretto and Drost testified concerning the events described above. In addition to testifying concerning his interview with Larsen detailed above, Koliha testified on cross-examination concerning his interview with Fioretto the following month. Defense counsel questioned Koliha about Fioretto's testimony regarding Larsen's threats. Fioretto did not tell Koliha that Lauren said Larsen would not stab anyone and Larsen then threatened to kill Fioretto.

Larsen offered the testimony of several witnesses, including Lauren's mother who disputed the length of time Fioretto had known her daughter. She also testified that a few days after the incident, Fioretto told her that he was not scared and that Larsen "never tried to stab him."

The jury convicted Larsen of counts 1 and 3, and found true he personally used a deadly weapon with respect to count 1. The jury acquitted him of count 2. At the sentencing hearing, Larsen admitted he suffered the prior felony juvenile adjudication. The trial court denied Larsen's motions to reduce count 1 to a misdemeanor and to strike his prior strike conviction. The court sentenced Larsen to five years in prison on count 1—two years doubled to four years for the prior strike conviction plus one year for the use enhancement. The court stayed the sentence on count 3 pursuant to section 654.

---

[1] All further statutory references are to the Penal Code.

DISCUSSION

Larsen argues insufficient evidence supports his conviction for count 1 because there was no evidence Fioretto was in sustained fear.  Not so.

"'"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]  Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'  [Citation.]"'  [Citation.]" (*People v. Lipsett* (2014) 223 Cal.App.4th 1060, 1063 (*Lipsett*).)

Section 422 makes it a crime to threaten another person with a criminal act that will result in death or great bodily injury to the person to whom the threat is communicated or to that person's immediate family member.  "The statutory language can be divided into five elements the prosecution must prove:  '(1) that the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person," (2) that the defendant made the threat "with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out," (3) that the threat—which may be "made verbally, in writing, or by means of an electronic communication device"—was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances. [Citation.]'  [Citation.]" (*Lipsett, supra,* 223 Cal.App.4th at p. 1064.)

"As used in the statute, 'sustained' has been defined to mean 'a period of time that extends beyond what is momentary, fleeting, or transitory. . . .  The victim's

5

knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear.  [Citation.]'  [Citation.]"  (*People v. Wilson* (2010) 186 Cal.App.4th 789, 808.)

Here, there was sufficient evidence Fioretto was in sustained fear.  The evidence at trial established Larsen propped himself on the backyard wall with a knife and demanded Fioretto explain why he was with his girlfriend.  Fioretto knew Larsen had previously stabbed someone, and Larsen had threatened to kill Fioretto two days earlier if he continued to see Lauren.  Larsen jumped into the backyard, threatened to kill Fioretto, grabbed his shoulder, and jabbed at his stomach with an imposing hunting knife.  After Lauren tried to diffuse the situation, Larsen told Fioretto he was going to die.  When Fioretto could not get a ride home from a friend, he began to walk home only as a last resort.  As he walked, he thought he saw someone hiding in the bushes and ran to a fire station to ask for help.  At trial, Fioretto repeatedly testified he was frightened.  Larsen told Koliha he brandished the knife only to scare Fioretto—he was successful.  Based on this evidence, the jury could reasonably conclude Fioretto was in sustained fear from the time of the encounter in the backyard until he arrived at the fire station seeking safety.  (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156 [fear lasting 15 minutes was sustained fear].)  This was sufficient evidence of sustained fear.

Larsen argues the evidence does not support the conclusion Fioretto was in sustained fear because Fioretto was not credible as evidenced by the discrepancies in his statements to sheriffs and his testimony at trial, and his trial testimony concerning how long he knew Lauren and the extent of their heroin use.  Larsen also asserts the following evidence demonstrates Fioretto was not in sustained fear:  Fioretto went outside to speak with Larsen despite Larsen's prior threat to kill him; Lauren was not afraid of Larsen as evidenced by her confronting him; Fioretto walked home; and Fioretto later told Lauren's mother that he was not afraid of Larsen.  Aside from the fact none of the evidence Larsen cites to conclusively establishes Fioretto was not afraid, this court does not reweigh

evidence, resolve conflicts in the evidence, or reevaluate a witness's credibility.  (*People v. Young* (2005) 34 Cal.4th 1149, 1181 ["[r]esolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact"].)  The jury heard and considered this evidence, and reasonably concluded Fioretto was in sustained fear when Larsen grabbed Fioretto and jabbed a large hunting knife at his stomach.

Larsen's conclusory attempt in his reply brief to claim Fioretto's sustained fear was not reasonable is meritless.  It was certainly reasonable for Fioretto to fear for his life when Larsen jabbed him with a hunting knife and told him he would kill him.  Therefore, sufficient evidence supports Larsen's conviction on count 1.

## DISPOSITION

The judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


RYLAARSDAM, J.


FYBEL, J.


7