Filed 4/28/16  In re D.J. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re D. J., a Person Coming Under the Juvenile Court Law. | C079854 |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>D. J.,<br><br>    Defendant and Appellant. | (Super. Ct. No. JV137056) |

In March 2015, a delinquency petition was filed alleging the minor, D. J., made a felonious terrorist threat.  (Pen. Code,[1] § 422.)  At the conclusion of a contested jurisdictional hearing, the juvenile court found the allegation true but deemed D. J.'s violation of section 422 a misdemeanor.  D. J. appeals, contending there was insufficient

---

[1]    All further section references are to the Penal Code.

evidence to support a finding that the victim was in sustained fear for her own safety. Disagreeing, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

At about 12:48 p.m. on March 25, 2015, Leise Martinez, principal of the New Technology High School in Sacramento, received a threatening e-mail that was addressed to her and other staff and students. The subject line of the e-mail stated, "GME, we're going to drop some students if you don't, quote, unquote, fuck give back wha (*sic*) is ours one." The body of the e-mail stated, "We are fucking going to be accrossed the street at 3:50 p.m. [C]onfront us then, or we'll have to shoot up the school. This is our last warning, we've already hacked most of the student[']s accounts (teachers too). We are Men and a woman tha [*sic*] you shouldn't have, messed with. My associates want to remain hidden, but I don't. I have light skin, close to 6 foot, easily angered and computer technology is what I live for. REMEMBER ASSHOLES, if ou [*sic*] demands are'nt [*sic*] met we will start killing students. We only have one demand and you should know it by now!"

Describing her initial reaction to reading the e-mail, principal Martinez testified, "Pounding heart, everything seemed to get really quiet." She got up, looked outside, walked out to the front of the school and "looked up the street into the quad, and just checked to see that all was in order." When asked if she was "concerned for [her] safety and the safety of those in the school," she replied "Definitely." Martinez took the threats in the e-mail "really seriously" and "took what it said literally and took measures." Regarding these measures, she testified, "I called 911. I informed my supervisor, district personnel so that they would be aware of the situation, took safety measures in terms of putting the school on lockdown, made appropriate communication with community members, students, and families."

At approximately 2:00 p.m., Sacramento Police Officer Carlos Martinez went to the school in response to "a threats call." He discussed the e-mail with the principal and

2

the school safety manager and compared it with several previous e-mails "sent to staff regarding cell phones and electronic devices that were taken from students." The school remained on lockdown until the regular dismissal time at 3:29 p.m., when the students, monitored by two police officers, were dismissed promptly. Several other police officers were posted near the school to be on the lookout for anyone matching the author's self-disclosed description. No suspect matching the description was seen. The police stayed at the school until about 5:00 p.m., and Officer Martinez monitored the school the next day. Asked how serious she took the threat, principal Martinez testified, "I took it absolutely seriously."

As a result of the investigation, D. J.'s computer IP address was linked to the threatening e-mail. Acknowledging his *Miranda*[2] rights, D. J. admitted to Officer Martinez that he sent the threatening e-mail, but claimed "he had sent it as a joke and that it -- basically, the joke went too far."

On March 30, 2015, a juvenile wardship petition was filed alleging D. J. had committed one felony count of making a terrorist threat. (§ 422.) During the contested jurisdictional hearing, D. J. did not testify or call any witnesses in his defense.

In finding the People had sustained their burden to prove D. J. violated section 422 beyond a reasonable doubt, the court found there was sufficient evidence that principal Martinez was in sustained fear from the threat. The court said, "She gets this email threaten[ing] to shoot up the school. She is concerned both for her own safety and for the safety of the students and she's not only concerned but I think she is in fear." Viewing all the circumstances, the court also considered her postthreat conduct -- the 911 call, the district supervisor call, and the school lockdown -- finding "that this [evidence] does meet the sustained fear [standard]."

---

**2**     *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].

## DISCUSSION

On appeal, D. J. contends one of the elements of making a terrorist threat -- that the person receiving the threat "be in sustained fear for his or her safety"[3] -- was not supported by sufficient evidence. We disagree.

### I

### *Standard Of Review*

Where, as here, a defendant challenges the sufficiency of the evidence to support his conviction, the standard of review is well settled: "On appeal, the test of legal sufficiency is whether there is substantial evidence, i.e., evidence from which a reasonable trier of fact could conclude that the prosecution sustained its burden of proof beyond a reasonable doubt. [Citations.] Evidence meeting this standard satisfies constitutional due process and reliability concerns. [Citations.] [¶] While the appellate court must determine that the supporting evidence is reasonable, inherently credible, and of solid value, the court must review the evidence in the light most favorable to the [judgment], and must presume every fact the jury could reasonably have deduced from the evidence." (*People v. Boyer* (2006) 38 Cal.4th 412, 479-480.)

"Issues of witness credibility are for the [trier of fact]." (*People v. Boyer*, *supra*, 38 Cal.4th at p. 480.) The testimony of a single witness is sufficient to support a

---

**3**      Section 422, subdivision (a) provides as follows: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

4

conviction unless the testimony is inherently improbable or physically impossible. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) " ' "To warrant the rejection of the statements given by a witness who has been believed by the trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions." " " (*People v. Allen* (1985) 165 Cal.App.3d 616, 623.)

Reversal for insufficient evidence is warranted only where it clearly appears that upon no hypothesis whatever is there sufficient evidence to support a conviction. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

II

*Sufficient Evidence Supports The Finding That*

*Principal Martinez Was In Sustained Fear*

To prove a violation of section 422, the prosecution must prove, among other things, "that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety.' " (*People v. Toledo* (2001) 26 Cal.4th 221, 228.) This element "requires proof of a mental element in the victim." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) Section 422 does not define "sustained" fear. (*Allen*, at p. 1156.) The *Allen* court defined "sustained" by its opposites, stating, "we find that it means a period of time that extends beyond what is momentary, fleeting, or transitory." (*Ibid.* [holding that "Fifteen minutes of fear of a defendant who is armed, mobile, and at large, and who has threatened to kill the victim and her daughter, is more than sufficient to constitute 'sustained' fear for purposes of this element of section 422"].)

D. J. acknowledges that the court credited principal Martinez's testimony that she took the threat "really seriously" and that she had a "[p]ounding heart." He also recognizes that the court stated that "given the reaction of the police coming and the lockdown I think this does meet the sustained fear [standard]." However, D. J. fails to

5

address anywhere in his opening brief the *most pertinent testimony* relating to the issue he has raised on appeal, which is contained in the following colloquy:

"[Prosecutor]: Okay. So when you read that e-mail, were you concerned for your safety and the safety of those in the school?

"[Principal Martinez]: Definitely."

Completely ignoring this critical testimony, D. J. attacks the juvenile court's finding by arguing that the *actions* principal Martinez took in response to the threatening e-mail do not support the finding that she was in "sustained fear for her safety" but instead "were more consistent with her merely complying with the school district's protocol for how to respond to these types of threats." D. J. attempts to support this assertion by pointing to alleged inconsistencies between principal Martinez's postthreat conduct and the existence of sustained fear. His arguments cover topics such as: (1) the principal's initial survey of the scene; (2) the type of lockdown; (3) the prior "prank" e-mails; (4) the manner of the police dispatch; and (5) Officer Martinez's initial assessment of the threat. In making these arguments, D. J. paints the evidence in a light most favorable to himself. However, on review, we "must review the evidence in the light most favorable to the prosecution, and must presume every fact the jury could reasonably have deduced from the evidence." (*People v. Boyer*, *supra*, 38 Cal.4th at p. 480.)

In *People v. Sanghera* (2006) 139 Cal.App.4th 1567, we discussed how the standard of review controls not only the nature and scope of our review, but also the defendant's manner of argument. We stated, "it is not enough for the defendant to simply contend, 'without a statement or analysis of the evidence, . . . that the evidence is insufficient to support the judgment[] of conviction.' [Citation.] Rather, he must *affirmatively demonstrate* that the evidence is insufficient." (*Sanghera*, at p. 1573.) Equally fruitless is "citing only [the defendant's] own evidence, or . . . arguing about what evidence is *not* in the record, or . . . portraying the evidence that is in the record in the light most favorable to himself." (*Ibid*.) To prevail on a sufficiency of the evidence

6

argument, "the defendant must set forth in his opening brief *all* of the material evidence on the disputed elements of the crime in the light most favorable to the People, and then must persuade us that evidence cannot reasonably support the jury's verdict.  [Citation.] If the defendant fails to present us with all the relevant evidence, or fails to present that evidence in the light most favorable to the People, then he cannot carry his burden of showing the evidence was insufficient because support for the [court]'s verdict may lie in the evidence he ignores."  (*Id*. at p. 1574.)

D. J.'s failure to discuss principal Martinez's testimony that she "definitely" was concerned for her personal safety is serious and fatal to his appeal because we "resolve[] neither credibility issues nor evidentiary conflicts," but defer to the trier of fact for "resolution of conflicts and inconsistencies in the testimony."  (*People v. Young*, *supra*, 34 Cal.4th at p. 1181.)  Additionally, his one-sided evaluation of principal Martinez's postthreat response is out of harmony with the requirements of our standard of review. To illustrate, his arguments include numerous conclusory statements about how "wholly illogical," "absurd,"  "not reasonable," and "inconceivable" it would be for the court to find sufficient evidence of sustained fear based on what principal Martinez did.  These arguments fail to acknowledge that upon its consideration of the totality of the circumstances, the juvenile court did not reach the same conclusion he does with respect to whether principal Martinez experienced sustained fear.  We cannot and will not reweigh the evidence the court found sufficient or close our eyes to the evidence D. J. ignored.

In sum, D. J. has failed to carry his burden of persuading us, in light of *all* material evidence *presented in the light most favorable* to the judgment, that there was insufficient evidence to support the court's finding that principal Martinez was in sustained fear.

## DISPOSITION

The judgment is affirmed.



/s/_____
Robie, Acting P. J.



We concur:



/s/_____
Butz, J.



/s/_____
Hoch, J.