Filed 9/9/20  P. v. Burns CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C089058 |
| Plaintiff and Respondent, | (Super. Ct. No. 18F5127) |
| v. | |
| DWAYNE BRIAN BURNS, | |
| Defendant and Appellant. | |

A jury found defendant Dwayne Brian Burns guilty of making criminal threats and violating a restraining order.  Defendant also stipulated to having served two prior prison terms under former Penal Code section 667.5, subdivision (b).[1]  The trial court sentenced defendant to three years in state prison but suspended execution of that sentence and placed defendant on probation.

On appeal, defendant contends there was insufficient evidence to support his conviction.  He further contends that, although the court failed to impose sentence on the prior prison term enhancements, under Senate Bill No. 136, the true findings related to

---

[1] Further undesignated statutory references are to the Penal Code.

1

those enhancement allegations must be stricken.  We will strike the findings.  We also note a clerical error in the court's February 8, 2019 minute order, which we will order corrected.  We affirm the judgment as modified.

## I.  BACKGROUND

On July 31, 2018, defendant was at the home of Daryl and Teresa in violation of a restraining order.  Teresa and defendant got into a lengthy argument about money (defendant wanted money from Teresa).  Defendant waived a kitchen knife at Daryl and Teresa and called Teresa a bitch.  Defendant threatened to cut them.  Daryl told defendant to leave, reminding him of the restraining order.  Defendant refused, saying he knew the police and nobody would believe Teresa or Daryl.

Afraid defendant would hurt them, Daryl moved in between Teresa and defendant and tried to get the knife.  Defendant cut Daryl's thumb.  Daryl pushed defendant backward into a table, Teresa called 911, and defendant left.

The People charged defendant with several crimes, including making criminal threats toward Teresa and violating a restraining order.  The People also alleged defendant personally used a deadly weapon and served two prior prison terms under former section 667.5, subdivision (b).

Daryl testified at trial.  Teresa refused to testify.  The court declared Teresa to be a victim of domestic violence, found she could not be imprisoned for refusing to testify under Family Code section 6211, subdivision (f) and Code of Civil Procedure section 1219 and declared her to be an unavailable witness under Evidence Code section 240.  The parties, however, stipulated to the authenticity of Teresa's call to 911 and the call was played for the jury.  The call was several minutes long; the jury was provided with transcripts.[2]

---

[2]  Those transcripts are not part of the record on appeal.

At the beginning of the call, Teresa sounds rattled and emotional and she is difficult to understand, but you can hear her say that defendant is trying to kill her and Daryl. The 911 operator tells Teresa to take a deep breath, to slow down so the operator can better understand what is going on and get their address. About a minute into the call, Teresa becomes easier to understand, her breath has slowed down, but her voice continues to shake. She tells the 911 operator that "we" have a restraining order against defendant but he refuses to "obey the law" and they cannot stop him from coming over. Teresa says defendant tried to stab her and Daryl.

Approximately two minutes into the call, the 911 operator asks Teresa where the knife is, and whether defendant is still there. Teresa, still rattled, does not know where the knife is. She also does not know where defendant is; she asks someone and they say defendant "took off." The 911 operator asks if he left on foot or in a vehicle; he left on foot. She then asks Teresa to describe defendant's clothing. Teresa describes defendant and tells the operator that he actually did stab Daryl. The 911 operator offers to send an ambulance, but Teresa says they can treat the wound at home.

The jury found defendant guilty of making criminal threats to Teresa and violating a restraining order. The jury found defendant not guilty of the remaining charges. The jury also found the enhancement allegations related to defendant's conduct not true. Defendant subsequently stipulated as true allegations that he served two prior prison terms under former section 667.5, subdivision (b).

At sentencing, the trial court imposed the upper term of three years in state prison but suspended execution of that sentence and placed defendant on formal probation, ordering defendant to serve 364 days in county jail. The court did not, however, impose sentence or strike either of the prior prison term enhancements. The court awarded defendant 257 days of custody credit, ordered him to pay various fines and fees, and ordered him to comply with the terms and conditions of his probation.

3

## II.  DISCUSSION

*A.      Sufficiency of the Evidence*

Defendant contends insufficient evidence supports the jury's verdict on the criminal threats conviction.  Specifically, he argues there is insufficient evidence Teresa suffered sustained fear as a result of his threat.  We disagree.

*1.      Applicable Legal Principles*

To establish criminal threats under section 422, the prosecution must prove:  (1) the defendant willfully threatened to commit a crime causing death or great bodily injury to the victim; (2) the threat was made with the specific intent that it be taken as a threat—even absent intent to carry out the threat; (3) the threat " 'was, "on its face and under the circumstances . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat" ' "; (4) the threat caused the victim " ' "to be in sustained fear for his or her own safety or for his or her immediate family's safety" ' "; and (5) under the circumstances, the fear was reasonable.  (*In re George T.* (2004) 33 Cal.4th 620, 630.)  "Sustained fear" involves (1) the emotional reaction the victim has to the communication, and (2) the period of time during which the victim experiences that fear.  The word "sustained," as used in section 422, refers to " 'a period of time that extends beyond what is momentary, fleeting, or transitory.' "  (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349 (*Fierro*).)

"Fifteen minutes of fear . . . is more than sufficient to constitute 'sustained' fear for purposes of . . . section 422."  (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156; see *Fierro*, *supra*, 180 Cal.App.4th at pp. 1348-1349; *People v. Wilson* (2015) 234 Cal.App.4th 193, 201.)  In some circumstances, even one minute of fear can be sustained fear.  (*Fierro, supra*, at p. 1349.)  "The victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.)

4

Where the sufficiency of evidence is challenged on appeal, we review the record in the light most favorable to the judgment, to determine whether it discloses substantial evidence—evidence that is "reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Snow* (2003) 30 Cal.4th 43, 66.)  We draw all available inferences supporting the jury's verdict.  (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382.)  " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' "  (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429, quoting *People v. Hillery* (1965) 62 Cal.2d 692, 702.)

2.      *Discussion*

Teresa did not testify at trial, but the jury did hear her call to 911.  It is evident from the outset of the call that Teresa is rattled and emotional.  The jury could hear the emotion in Teresa's voice when she told the operator that defendant was trying to kill her.  Two minutes into the call, Teresa starts to catch her breath as she is talking to the 911 operator.  This is not, as defendant argues, evidence she was not in sustained fear: "When one believes he is about to die, a minute is longer than 'momentary, fleeting, or transitory.' " (*Fierro*, *supra*, 180 Cal.App.4th at p. 1349.)  Rather, the jury could reasonably infer that Teresa is simply following the 911 operator's instructions to take a breath and slow down so the operator can help her.

Moreover, while Teresa became easier to understand as the call progressed, her voice continued to shake as she told the 911 operator that defendant had a knife and tried to stab her.  Teresa said they had a restraining order against defendant but he refused to comply with the restraining order and they could not stop him from coming over.  In addition to the continued tremor in Teresa's voice, the jury could consider these circumstances as further evidence that Teresa's fear was more than " 'momentary, fleeting, or transitory.' " (*Fierro*, *supra*, 180 Cal.App.4th at p. 1349; *People v. Allen*,

5

*supra*, 33 Cal.App.4th at p. 1156 [knowledge of prior conduct is relevant to sustained fear].)

Thus, while Teresa did not take the stand to testify, the 911 call presented sufficient evidence from which the jury could conclude she was in sustained fear.

B.      *Senate Bill No. 136*

In October 2019, the Governor signed Senate Bill No. 136 (Senate Bill 136) (2019-2020 Reg. Sess.), which amended section 667.5, effective January 1, 2020 (stats. 2019, ch. 590, § 1).  Senate Bill 136 narrowed eligibility for the one-year prior prison term enhancement to only those who have served a prior prison sentence for a sexually violent offense, as defined in Welfare and Institutions Code section 6600, subdivision (b). (§ 667.5, subd. (b).)  The amendment applies "retroactively to all defendants whose judgments are not yet final as of that date."  (*People v. Petri* (2020) 45 Cal.App.5th 82, 94.)

There is no question that defendant's judgment was not final on the effective date of the amendment to former section 667.5, subdivision (b).  Nor is there any question that former section 667.5, subdivision (b) no longer applies to defendant because his prison priors were not based on sexually violent offenses.  At the time of sentencing, however, the trial court was required to impose an additional year for each former section 667.5, subdivision (b) enhancement, or strike the enhancement.  (See *People v. Langston* (2004) 33 Cal.4th 1237, 1241 [once prior prison term is found true the enhancement is mandatory unless stricken].)  The court failed to do either, resulting in an ambiguous judgment.  We agree with defendant it is preferable that there be a clear adjudication striking the now-unauthorized section 667.5 finding by the trial court.  (cf. *In re Dupper* (1976) 57 Cal.App.3d 118, 122, unnumbered fn. ["We consider it highly preferable for the sentencing judge to impose an unambiguous sentence rather than one requiring interpretation"].)  Accordingly, we will modify the judgment and strike the court's true findings relative to defendant's prior prison terms.

6

*C.*      *Clerical Error*

At sentencing, the trial court sentenced defendant to the upper term of three years in state prison. The court suspended the *execution* of that sentence and placed defendant on probation. The minute order from that hearing ("the sentencing order") however, erroneously indicates the trial court suspended *imposition* of the three-year sentence. " 'Rendition of judgment is an oral pronouncement.' " (*People v. Mesa* (1975) 14 Cal.3d 466, 471, citing *People v. Hartsell* (1973) 34 Cal.App.3d 8, 14.) "Entering the judgment in the minutes being a clerical function [citation], a discrepancy between the judgment as orally pronounced and as entered in the minutes is presumably the result of clerical error." (*Mesa, supra*, at p. 471.) Accordingly, the sentencing order must be corrected to reflect the actual judgment of the court.

## III. DISPOSITION

The trial court's true findings relative to defendant's prior prison terms are stricken. The judgment is affirmed as modified. The trial court is directed to amend and modify the sentencing order consistent with this opinion.

/S/

_____

RENNER, J.

We concur:

/S/

_____

HULL, Acting P. J.

/S/

_____

DUARTE, J.

7