Filed 8/26/24  P. v. Garibay CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. LOUIS ALBERTO GARIBAY, Defendant and Appellant. | B330504 (Los Angeles County Super. Ct. No. BA510065) |

APPEAL from a judgment of the Superior Court of Los Angeles County, David R. Fields, Judge.  Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

## INTRODUCTION

Louis Alberto Garibay appeals from a judgment of conviction for making a criminal threat against a security guard patrolling Union Station in Los Angeles. He contends the record lacks substantial evidence to support a finding the victim experienced "sustained fear," an element of the offense. Garibay further contends the trial court erred in failing to instruct the jury on the lesser-included offense of an attempted criminal threat. Garibay argues the jury could reasonably have concluded he did not complete the crime of making a criminal threat. We conclude the trial court did not err, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 22, 2022, the People filed an information alleging Garibay made a criminal threat against Isamar Gonzalez (Pen. Code, § 422).[1] The People further alleged Garibay engaged in violent behavior that indicated a serious danger to society and that he was armed with a weapon. (Cal. Rules of Court, rule 4.421(a)(2) & (b)(1).)

At trial, the prosecution presented testimony from Gonzalez and other witnesses. Gonzalez testified she had been a security guard since 2019 and had worked as a supervisor at Union Station in Los Angeles for four months before the incident. On October 22, 2022, at approximately 3:40 a.m., Gonzalez was patrolling the area of Union Station East when Gonzalez heard

---

[1] All undesignated statutory references are to the Penal Code.

Garibay yell obscenities about the police while looking in her direction. She was wearing a blue uniform and testified she did not think Garibay was directly speaking to her but she also "[felt] like he was indirectly speaking to me, if that makes sense."

Garibay followed Gonzalez into an elevator, and Gonzalez immediately exited because she thought to herself "this is obviously not a good situation to be in." Gonzalez recalled they both looked at each other as she exited the elevator, and Garibay gave her a "weird, goofy look."

Garibay followed Gonzalez out of the elevator. Once outside, Gonzalez tried to assess the situation and whether Garibay needed help. She then saw the blade of a three-and-a half-inch knife glinting in the overhead lights. Garibay was holding the knife in his hand toward the top of his thigh. Gonzalez "froze because passengers were going by. . . . [She] did not know if he intended to hurt [her], hurt himself or hurt someone passing by."

When Gonzalez instructed a male passenger to move away from the area, Garibay said, "oh setup," which she understood to mean she was trying to set him up. As Gonzalez tried to offer Garibay help, Garibay walked toward her with the knife and said, "I'm going to cut your . . . head off." Garibay was about 10 to 12 feet away from Gonzalez when he made the threat. Gonzalez believed Garibay was capable of causing her bodily injury and took the threat seriously. She attempted to keep the distance between them and started walking backwards, facing Garibay, to the middle of a bus turnaround.

Gonzalez called a code yellow using her radio, requesting immediate assistance from security officers. She testified that she would not call a code yellow unless she was "in fear" for her

safety.  She also knew a code yellow would cause security personnel to "run" to provide assistance.  Approximately five security guards arrived at the scene.  Garibay stood on top of a bench and began "intimidating passengers" while brandishing the knife.

Gonzalez also called 911, and Los Angeles Police Department officers responded.  She estimated she called 911 five to 10 minutes after Garibay said he would cut off her head.  Gonzalez testified that, since patrolling the station, she has called 911 more than 10 times but does not typically call 911 if deescalation is possible.

After police officers arrived, Garibay attempted to flee, but after a short chase, turned and faced the officers with the knife in hand, took a fighting stance, and stepped toward the officers.  Officers tased Garibay, recovered the knife, and took him into custody.

Garibay waived his right to testify at trial.  Garibay's defense was that there was insufficient evidence to prove he intended his statements as threats or that they were clear, immediate, unconditional, and specific enough to convey a serious intention and immediate possibility of being carried out.  He also argued the evidence created reasonable doubt Gonzalez was in sustained fear for her safety, pointing to the physical distance between them at the time he made his threat, the repeated nature of such incidents at her workplace, and her calm demeanor during the 911 call.

The jury found Garibay guilty of making a criminal threat and also found true that he used a weapon in the commission of

the crime.[2]  The court sentenced Garibay to the three-year upper term.  Garibay timely appealed.

## DISCUSSION

A.    *There Is Substantial Evidence To Support the Jury's Finding Gonzalez Experienced Sustained Fear*

Garibay's principal argument on appeal is that there is not substantial evidence Gonzalez experienced sustained fear as a result of his threat.  We conclude the evidence was sufficient to support the jury's finding that Garibay's threat to Gonzalez that he would cut off her head, which he made while he brandished a knife and advanced toward her, caused Gonzalez to reasonably fear for her safety for a "period of time that extends beyond what is momentary, fleeting, or transitory."  (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156 (*Allen*).)

1.    *Standard of Review and Governing Law*

"Claims challenging the sufficiency of the evidence to uphold a judgment are generally reviewed under the substantial evidence standard.  Under that standard, '"an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find [the elements of the crime] beyond a reasonable doubt."'"  (*In re George T.* (2004) 33 Cal.4th 620, 630-

---

[2]    On January 24, 2023, the trial court dismissed the serious danger to society allegation made pursuant to California Rules of Court, rule 4.421(b)(1).

631.) "In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

In order to prove the crime of criminal threats in "violation of section 422, the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228 (*Toledo*).)

Garibay challenges only the fourth element that the threat actually caused Gonzalez to be in sustained fear for her own safety. Fear is "sustained" within the meaning of section 422 if it lasts for a "period of time that extends beyond what is

6

momentary, fleeting, or transitory." (*Allen, supra,* 33 Cal.App.4th at p. 1156 [15 minutes was "more than sufficient" to show sustained fear where the defendant was "armed, mobile, and at large" and had threatened to kill the victim and her daughter]; accord, *People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349 (*Fierro*) [the one minute during which the defendant threatened to kill the victim and displayed what appeared to be a gun in his waistband was sufficient to establish the victim was in sustained fear]; see *People v. Culbert* (2013) 218 Cal.App.4th 184, 188 [substantial evidence supported a finding of sustained fear when the victim saw the defendant bring in a gun, hold it to the victim's head, and pull the trigger, notwithstanding the defendant's contention the gun was not loaded and there was only a "split second" between the time he held it to the victim's temple and he pulled the trigger].)

2.    *Analysis*

Garibay contends the evidence was insufficient to support the element of sustained fear because a person in Gonzalez's position—"a security guard supervisor" who "was used to seeing individuals acting in strange ways"—would not reasonably be in sustained fear even if she experienced an instant of fear when she saw the knife.[3]  Garibay argues Gonzalez testified she was in

---

[3]    To the extent Garibay challenges the reasonableness of Gonzalez's fear because she was a security guard, he has forfeited any such argument by failing to present any argument or legal authorities in support.  (See *People v. Hovarter* (2008) 44 Cal.4th 983, 1029; *People v. Stanley* (1995) 10 Cal.4th 764, 793.)  In all events, it is clear that being a security guard does not preclude Gonzalez from being in reasonable fear for her life.  (*See People v.*

fear when he threatened to cut her head off but "within minutes she segued into professional work mode, radioed for another supervisor, and called 911." He highlights Gonzalez's calm demeanor when speaking to the 911 operator and her testimony that she thought Garibay needed help as demonstrating that Gonzalez was not in sustained fear. Garibay's argument is unpersuasive.

Gonzalez testified that five to 10 minutes elapsed between the time Garibay threatened to cut her head off and when she called 911. Gonzalez testified she believed Garibay could carry out his threat and that she feared for her safety and that of others. During this five- to 10-minute time period, Garibay advanced towards Gonzalez, brandishing a knife. She testified she retreated, walking backwards to keep him in her sight and to maintain some distance between them. She also called a code yellow on her radio for immediate assistance from security guards. She testified she would not call a code yellow "for nothing" and that security guards "run for code yellow," demonstrating her view that the situation was urgent. This is more than substantial evidence for a reasonable jury to make a finding Gonzalez was in sustained fear for a "period of time that extends beyond what is momentary, fleeting, or transitory." (*Allen, supra,* 33 Cal.App.4th at p. 1156.)

---

*Wilson* (2010) 186 Cal.App.4th 789, 817 [inmate's threats reasonably placed correctional officer in sustained fear]; *People v. Mosley* (2007) 155 Cal.App.4th 313, 324-325 [similar re sheriff's deputies].)

Indeed, even under Garibay's own version of the events that night, Gonzalez's fear lasted only "minutes" until "she segued into professional work mode." But the law recognizes that even one minute of fear or less is sufficient to constitute sustained fear for purposes of the criminal threats statute. (See, e.g., *Culbert, supra*, 218 Cal.App.4th at p. 190 ["split second" sufficient]; *Fierro, supra*, 180 Cal.App.4th at p. 1349 [one minute sufficient].)

Garibay further contends the evidence supports a finding Gonzalez did not experience fear beyond the moment she saw the knife, citing her calm demeanor during the 911 call and her attempt to determine whether he needed help. That Gonzalez handled the situation with poise and professionalism does not mean she did not experience sustained fear for her safety. Gonzalez clearly testified that she feared for her safety during her encounter with Garibay. In all events, we do not reweigh the evidence on appeal, and our role is merely to determine whether substantial evidence supported the jury's finding of sustained fear. (See *In re George T.*, *supra*, 33 Cal.4th at p. 631; *Fierro*, *supra*, 180 Cal.App.4th at p. 1347.) We conclude there was more than sufficient evidence supporting the jury's finding that Garibay's threat to Gonzalez that he would cut her head off while he was carrying a knife actually caused Gonzalez to be in sustained fear for her safety.

B.    *The Court Had No Duty To Instruct on the Lesser-included Offense of Attempted Criminal Threat*

Garibay also argues the trial court had a sua sponte duty to instruct the jury with the lesser-included offense of attempted criminal threat and erred by not doing so.

"A trial court has a sua sponte duty to instruct the jury on a lesser included uncharged offense if there is substantial evidence that would absolve the defendant from guilt of the greater, but not the lesser, offense.  [Citation.]  Substantial evidence is evidence from which a jury could conclude beyond a reasonable doubt that the lesser offense was committed.  [Citations.]  Speculative, minimal, or insubstantial evidence is insufficient to require an instruction on a lesser included offense." (*People v. Simon* (2016) 1 Cal.5th 98, 132 (*Simon*).)  A lesser-included instruction need not be given when there is no evidence that the offense is less than that charged.  (See *People v. Mendoza* (2000) 24 Cal.4th 130, 174.)  Our review is de novo.  (See *Simon,* at p. 132; *People v. Manriquez* (2005) 37 Cal.4th 547, 584.)

Attempted criminal threat is a lesser-included offense of the completed offense of making a criminal threat.  (See *Toledo, supra,* 26 Cal.4th at p. 226; *In re Sylvester C.* (2006) 137 Cal.App.4th 601, 610.)  A defendant commits an attempted criminal threat if he or she takes all steps necessary to complete the crime, but a fortuity intervenes to prevent the completion; for example, a written threat is intercepted, or the threat is received, but the intended victim either misunderstands the threat or "for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear."  (*Toledo,* at p. 231.)

According to Garibay, there was substantial evidence his threat did not actually cause Gonzalez to experience sustained fear because Gonzalez acted calmly and professionally.  Gonzalez immediately radioed for assistance from other security guards

10

and also called 911. Gonzalez told the 911 operator, "Yeah, I'm okay. I'm just kinda startled." Gonzalez simultaneously spoke with the 911 operator, engaged with the other security supervisor, stated that a police vehicle had arrived, and also stated police officers may be needed for an unrelated event involving another individual at Union Station who was "'stabbing poles.'"

Again, Gonzalez's calm and professional demeanor does not mean she did not fear for her safety when Garibay told her he would cut her head off while he was carrying a knife. Indeed, Garibay relies only on Gonzalez's conduct during the 911 call, which took place five to 10 minutes after the threat from Garibay and after other security guards had arrived on the scene, as evidence Gonzalez had no sustained fear. As discussed above, her testimony was sufficient evidence demonstrating she had sustained fear in the time period before the 911 call. Gonzalez testified she feared for her safety when she saw Garibay holding a knife. He threatened to cut off her head and she believed he could do it. He then advanced towards her with the knife as she attempted to move away from him. She called a code yellow, which she knew would cause other security guards to run towards her. There is no evidence from which the jury could conclude Gonzalez did not fear Garibay for the five to 10 minutes before she called 911.

In short, Garibay's reliance on Gonzalez's demeanor and conduct during and after the 911 call is misplaced. Garibay has not demonstrated the trial court erred by not instructing the jury on attempted criminal threat under these circumstances.

11

## DISPOSITION

The judgment is affirmed.

MARTINEZ, P. J.

We concur:

FEUER, J.

STONE, J.