Filed 7/1/16  P. v. Sims CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B263878 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. MA059763) |
| JERMAYNE LAMAR SIMS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Eric P. Harmon, Judge.  Affirmed as modified.

Gloria C. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Jermayne Lamar Sims was convicted of making a criminal threat (Pen. Code, § 422) and numerous other offenses connected with stalking his ex-girlfriend, M.R.[1]  He raises three issues on appeal.  First, he contends there was insufficient evidence of sustained fear to support his criminal threat conviction.  Second, he argues that the amount of restitution recorded on the abstract of judgment should be stricken because it was not orally pronounced at sentencing.  Lastly, he claims that the trial court erroneously miscalculated the presentence custody time credited to his sentence.

We find substantial evidence supports the conviction.  We refuse to strike the amount of restitution recorded on the abstract of judgment because the trial court held a proper restitution hearing.  However, we agree that the trial court erroneously miscalculated the amount of presentence credit.  Except for the presentence credit modification, we affirm.

## FACTS AND PROCEDURAL HISTORY

This appeal focuses on the hostile message defendant left on M.R.'s telephone in which he threatened to break her window and "f[uck her] up."  However, to provide context, we discuss M.R.'s prior history with defendant.  M.R. and defendant began dating in 2012, but had problems in their relationship almost from the outset.  Defendant was controlling, threw tantrums, yelled, and threatened M.R.  M.R. did not want defendant to move in with her, but defendant did as he pleased; he kept a car with his belongings parked at her home and even began receiving his mail at M.R.'s address.  M.R. ended the relationship in July 2012, but defendant's intimidating behavior continued.  He stalked and threatened M.R. and, out of fear, she would accede to his demands, whether to allow him to enter or stay the night.

Before M.R. ended the relationship, she became pregnant with defendant's child, and in November 2012 gave birth.  M.R. still did not feel safe around defendant, so did not want him living with her.  However, because M.R. believed it was important for the

---

[1]    All statutory references are to the Penal Code.

2

child to know her father, she tried to be cordial and to reason with defendant. M.R. told defendant he would be allowed to visit the child, but only when she permitted. Defendant became enraged and, in an act of vengeance, raped M.R. In a desperate attempt to escape the sexual abuse, M.R. jumped out of a window, breaking both her legs.

In February 2013, M.R. obtained a restraining order against defendant. When defendant was served with the restraining order, he ripped it up on the spot. Disregarding the restraining order and undeterred by M.R.'s frequent calls to the police, defendant continued to come and go as he pleased. Somehow, he obtained a key to M.R.'s house, which he used until she changed the locks. Undiscouraged by the change of locks, defendant continued to invade M.R.'s home by climbing through windows, using the garage door, and kicking the doors in. Finally, on February 22, 2013, defendant was arrested for violating the restraining order. He was in county jail from that date until March 23, 2013.

Between March 23 and March 24, 2013, M.R. received three telephone messages from defendant.[2] In the first message, defendant told M.R. that if she did not want any problems at her house, she needed to answer his phone calls. In the second, he threatened to "bust out all the fucking windows" and "stab out all the fucking tires" on her van. In the third, he threatened to "bust out [her] motherfucking window" and to "f[uck her] up." M.R. was terrified that defendant would carry out his threats.

On May 2, 2013, approximately one month after defendant left M.R. the threatening messages, he went to M.R.'s home at 11:00 at night and refused to leave despite M.R.'s repeated requests. Afraid to provoke defendant, M.R. ultimately allowed him to sleep there. Early the next morning, defendant tried to steal M.R.'s house and car

---

[2]     The operative information alleged the threatening phone calls occurred between March 17 and 24, 2013. Defendant notes he was in jail for most of this period and could not have made the calls while incarcerated. The jury was properly instructed that the prosecution was not required to prove that the offense took place on an exact date, only that it happened reasonably close to that date. In any event, there was a two-day window in which defendant had been released from jail, and the jury reasonably could have found that he likely left the messages during that time.

keys, but M.R. caught him in the act, and the two argued. The argument moved outside, where defendant reversed his car over M.R.'s feet. She yelled out in pain. He then put the car in drive, and pulled forward running over her feet a second time. Nigel, M.R.'s adult son, ran after defendant yelling that he had hurt M.R. Defendant punched Nigel through the open car window and then proceeded to drag him down the street with the car. Following this incident, M.R. played defendant's threatening messages to the police and had two of her sons disconnect the garage door opener to prevent defendant from coming in through the garage. After further stalking, harassing, and vandalism, defendant was eventually arrested on January 23, 2014.

Defendant was charged by an amended eight-count information with stalking (§ 646.9), felony and misdemeanor vandalism (§ 594), two counts of assault with a deadly weapon (§ 245), dissuading a witness (§ 136.1), and making criminal threats. Several prior conviction enhancements were alleged. Defendant pleaded not guilty and the case proceeded to jury trial. The jury found defendant guilty of stalking, making a criminal threat, both counts of assault with a deadly weapon, and one count of felony vandalism. The court also found the allegations as to defendant's priors to be true. Defendant was sentenced to a total of 22 years in prison. The trial court advised the parties at sentencing that a restitution determination would be made at a later date. Neither party objected. The trial court held a restitution hearing on February 20, 2015, and ordered victim restitution in the amount of $9,684.40. Defendant appealed from the judgment.

## DISCUSSION

1. *Sufficiency of Evidence to Support a Finding of Sustained Fear*

    a. <u>Standard of Review</u>

Defendant's only argument on the merits of any of the counts of which he was convicted is a substantial evidence challenge to the criminal threats charge. He claims insufficient evidence of sustained fear. Claims challenging the sufficiency of the evidence to uphold a judgment are reviewed under the substantial evidence standard.

4

Under this standard, " ' "an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find [the elements of the crime] beyond a reasonable doubt." ' [Citation.]" (*In re George T.* (2004) 33 Cal.4th 620, 630-631 (*George T.*).) Resolution of credibility issues and evidentiary conflicts, such as inconsistencies in the testimony, "is the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181 (*Young*).) If the evidence reasonably justifies the trier of fact's findings, the reviewing court's opinion that the evidence might also reasonably support a contrary finding does not warrant a reversal of the judgment. (*George T.*, at pp. 630-631.) Unless "the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*Young*, at p. 1181.)

  b. <u>Criminal Threats Elements of Offense</u>

  In order to sustain a conviction of a criminal threat under section 422, the prosecution must prove the following elements: " '(1) that the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person," (2) that the defendant made the threat "with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of carrying it out," (3) that the threat . . . was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.' [Citation.]" (*George T.*, *supra*, 33 Cal.4th at p. 630, citing *People v. Toledo* (2001) 26 Cal.4th 221, 228.)

  Here, defendant argues that the evidence was insufficient that M.R. was in sustained fear. Sustained fear refers to an emotional state of mind spanning a period of time that is more than momentary, fleeting, or transitory. (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156 (*Allen*).) The requirement that the victim reasonably be in

sustained fear has a subjective and an objective component. Under the fourth and fifth elements discussed in *George T.*, a victim must actually be in sustained fear, and the sustained fear must also be objectively reasonable under the circumstances. (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140.) The surrounding circumstances that a jury may consider under both elements include: the relationship of the parties, a victim's knowledge of the defendant's prior conduct, and the manner in which the communication was made. (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 860.) Moreover, "a threatening statement does not have to be the sole cause of the victim's fear and that a statement the victim does not initially consider a threat can later be seen that way based upon a subsequent action taken by a defendant." (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1014 (*Solis*).)

       c.     <u>Analysis</u>

       **1.     Evidence of Subjective Fear**

We discuss first the evidence as to subjective sustained fear. Here defendant had a history of stalking and harassing M.R., and M.R. had called the police for help with the situation several times prior to the threatening phone messages. Moreover, M.R. had obtained (and defendant was aware of) a restraining order against him. Defendant was subsequently arrested for violating that restraining order and the court entered a criminal protective order against him. Finally, M.R. was a victim of sexual abuse at the hands of defendant prior to making the criminal threat. M.R. even jumped out of a window, breaking both her legs, in order to escape that abuse. M.R.'s knowledge of defendant's prior conduct relates directly to her mental and emotional state after defendant left the threatening message on her phone, and the jury reasonably could have found that M.R. was actually (subjectively) in sustained fear.

Defendant's conduct after leaving the threatening message enhanced the nature of his messages and contributed to the subjective element of her sustained fear. On May 2, 2013, approximately one month after defendant's message said that he would "f[uck M.R.] up," he went to M.R.'s home, uninvited, at 11:00 p.m. and refused to leave. The next morning, after an altercation, defendant ran over M.R.'s feet with his car, twice.

6

M.R.s son, Nigel, chased after defendant's car, leading defendant to punch and drag him down the street. Defendant's subsequent actions gave meaning to his earlier message and indicated, subjectively, to M.R. that he was serious when he made the threat. Indeed, following the incident with the car, M.R. played Defendant's threatening messages to the police and had her sons disconnect the garage door opener to prevent defendant from coming in through the garage. Thus, the jury properly concluded that M.R. was actually in sustained fear.

## 2. Evidence of Objective Fear

The objective element of sustained fear is similarly satisfied. All of the facts demonstrate that defendant had access to M.R. and her family and could hurt them. The jury could find it objectively reasonable that defendant's increasingly menacing behavior caused M.R. to be in sustained fear for her and her family's safety until he was finally arrested.

Defendant contends that the evidence is insufficient to support a finding of sustained fear for several reasons. First, he claims that there were no facts that suggested M.R. was in sustained fear for any period of time. The definition of sustained fear set forth in *Allen* does not require that a victim be in sustained fear for a calculable period of time, only that the fear be sustained beyond what is momentary, fleeting, or transitory. (*Allen*, *supra*, 33 Cal.App.4th at p. 1156.) In *Allen*, the 15 minutes in which the victim was threatened at gunpoint was more than fleeting. (*Ibid*.) Here, M.R. testified that the messages left by defendant caused her fear. Moreover, a threatening statement by the defendant is considered in the context of surrounding circumstances, including the defendant's subsequent conduct. (*Solis*, *supra*, 90 Cal.App.4th at p. 109.) Here, defendant's actions after leaving the message indicated to M.R. that he was serious, that he had access to her and her family, and that he could hurt them. Such circumstances reasonably caused M.R. to be in sustained fear for her and her family's safety until defendant was finally arrested.

Next, defendant argues that the jury could reasonably infer that M.R. was not in sustained fear because she did not contact the police immediately after receiving the

7

messages or take any immediate steps to protect herself and her children in response. That is not the test. Even if the evidence might also reasonably support a contrary finding, a reversal is not warranted if the evidence reasonably justifies the jury's findings. (*George T.*, *supra*, 33 Cal.4th at pp. 630-631.) In any event, there is no requirement that the victim must call the police for the jury to find sustained fear. (*People v. Stanfield* (1995) 32 Cal.App.4th 1152 [victim did not call police until after receiving a package containing a dead cat because the package greatly changed the circumstances of the earlier telephoned threat].) Here, the jury could properly consider the fact that after defendant left the threatening message, he ran over M.R.'s feet and dragged her son down the street with a car, extending the period of fear. After defendant's conduct had proven his threat to be serious, M.R. played the threatening messages for the police. The delay does not undermine the jury's finding of sustained fear.

2.    *Restitution*

Defendant also argues that the amount of restitution recorded on the abstract of judgment must be stricken because it was not orally pronounced at sentencing. Section 1202.46 provides that "when the economic losses of a victim cannot be ascertained at the time of sentencing pursuant to subdivision (f) of section 1202.4, the court shall retain jurisdiction over a person subject to a restitution order for purposes of imposing or modifying restitution until such time as the losses may be determined. (§ 1202.46.) Here, the record shows that the parties agreed at the sentencing hearing that if any restitution were owed, the prosecutor would advise the court at a later date. The trial court then properly held a restitution hearing on February 20, 2015, at which defendant was present and was represented by counsel. Insofar as neither party designated the reporter's transcript for inclusion in the record on appeal, there is no reporter's transcript of the restitution hearing. Nonetheless, the minute orders in the clerk's transcript indicate that restitution was properly ordered at the restitution hearing on February 20, 2015. We find no error.

8

*3.     Defendant's Presentence Credits*

Defendant's final argument is that the trial court erroneously miscalculated the amount of presentence credits.  Respondent agrees with defendant that he is entitled to another day of custody credit.  A defendant is entitled to credit for days spent in actual custody beginning with the date of arrest and continuing until the date of sentencing.  (*People v. Bravo* (1990) 219 Cal.App.3d 729, 735.)  Here, defendant was arrested on January 23, 2014 and was sentenced on June 18, 2014.  Thus, defendant was entitled to 147 days of custody credit, one day more than the 146 days he received.  We order the abstract of judgment modified.

## DISPOSITION

The superior court is directed to modify the abstract of judgment to reflect that defendant is entitled to 147 days of custody credit.  The superior court is to forward a corrected copy of the abstract of judgment to the Department of Corrections.  As modified, the judgment is affirmed.


                                                    RUBIN, J.
WE CONCUR:


        BIGELOW, P. J.


        GRIMES, J.


9