Filed 11/2/22  P. v. Navarro CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RUDY NAVARRO,<br><br>Defendant and Appellant. | F083216<br><br>(Super. Ct. No. 21CMS0124)<br><br>**MODIFICATION OF OPINION AND DENIAL OF REHEARING [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the opinion herein filed on October 14, 2022, be modified as follows:

1.  On page 8, in the last line after "(See *Allen*, *supra*, 33 Cal.App.4th at p. 1156 & fn. 6.)"  the following text is added:

Furthermore, C.S. testified she continued to experience fear *after* the incident.

Defendant argues that the language the prosecutor used to elicit this testimony was insufficient to support a finding of sustained fear. Specifically, defendant takes issue with the use of the word "any" in the following testimony:

"[PROSECUTOR:]  And were you in fear of your safety at that time?

"[WITNESS:]  Yes.

"[PROSECUTOR:]  And did that fear stay with you for any amount of time after the incident?

"[WITNESS:]  Yes."

Defendant claims that "any" encompasses a momentary, fleeting, or transitory period of time.  Although C.S. did not testify her fear was sustained for any particular length of time, the absence of testimony as to the precise duration of her fear did not demonstrate she did not experience sustained fear.  On the contrary, the testimony challenged by defendant confirmed that she continued to experience fear even after the incident had ended.  Considering all the evidence mentioned above, including this testimony, a reasonable trier of fact could have concluded C.S. experienced sustained fear.  (See *People v. Ortiz* (2002) 101 Cal.App.4th 410, 417 [whether victim was in sustained fear can be inferred from the evidence]; *People v. Cravens*, *supra*, 53 Cal.4th at p. 507 [In reviewing the sufficiency of the evidence, " 'we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence— that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' "].)

This modification does not effect a change in the judgment.

The petition for rehearing is denied.

FRANSON, A.P.J.

WE CONCUR:

PEÑA, J.

MEEHAN, J.

2.

Filed 10/14/22  P. v. Navarro CA5 (unmodified opinion)

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RUDY NAVARRO,<br><br>    Defendant and Appellant. | F083216<br><br>(Super. Ct. No. 21CMS0124)<br><br>**OPINION** |

THE COURT[*]

APPEAL from a judgment of the Superior Court of Kings County.  Michael J. Reinhart, Judge.

Kieran D. C. Manjarrez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Franson, Acting P. J., Peña, J. and Meehan, J.

Defendant Rudy Navarro was convicted by jury trial of second degree robbery and criminal threats. On appeal, he contends there was insufficient evidence to support his criminal threats conviction because the victim did not suffer "sustained fear," an element of the crime. We affirm.

## PROCEDURAL SUMMARY

On May 24, 2021, the Kings County District Attorney filed a first amended information charging defendant with second degree robbery (Pen. Code, § 211; count 1)[1] and criminal threats (§ 422, subd. (a); count 2). The amended information specially alleged personal use of a firearm (§ 12022.53, subd. (b)) as to both counts. It was further alleged defendant had suffered five prior strike convictions within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and five prior serious felony convictions (§ 667, subd. (a)(1)).

On May 27, 2021, the jury found defendant guilty of both counts, but found the firearm special allegations not true. It found true the prior strike convictions and prior serious felony convictions.[2]

On August 5, 2021, the trial court sentenced defendant to 15 years in state prison. On count 1, defendant was sentenced to five years doubled to 10 years pursuant to the Three Strikes law, plus five years for the prior serious felony conviction. On count 2, he was sentenced to three years, doubled to six years pursuant to the Three Strikes law, which was stayed pursuant to section 654.

On August 19, 2021, defendant filed a notice of appeal.

---

[1]    All further statutory references are to the Penal Code.

[2]    One prior strike conviction was dismissed prior to submission to the jury.

2.

## FACTUAL SUMMARY

On January 8, 2021, C.S. was working at a discount store when defendant[3] caught her attention due to the way he was acting. She noticed he had been looking at her, so she approached him and asked him if he needed help as she put products away. He refused help and continued to shop, putting things in his shopping cart. At one point, she walked out of the back room and caught him shoving items into new reusable bags. She again asked him if he needed help. He responded that he was putting his items in the bag because they were falling through the shopping cart holes. He had two bags full of merchandise. She asked him to purchase the bags before using them and then stood by the front door to divert him from taking the merchandise without paying. Defendant was wearing a mask due to COVID-19 requirements and had been in the store for approximately 20 minutes.

Defendant eventually began walking out with the unpaid merchandise. C.S. was still standing by the front door entrance. When she asked him to pay, he lifted up his shirt and she saw what she believed to be the handle of a gun. He told her to move, or he would "f[***]ing shoot" her while approximately three feet away. She described the gun as "pleated black" with silver on it. She was familiar with guns as she had held and shot one before. She was shocked, scared, and angry. She felt he would follow through with his threat and feared for her safety. She said the fear stayed with her after the incident and it still had an effect on her on the day of trial. She said, "I am a little bit more—kind of like don't like to ask customers if they need help, I think more about what I do now." After making the statement, defendant left with the unpaid merchandise. She watched him walk out and took pictures as he got into his vehicle and called 911.

---

**3**  C.S. identified defendant in court as the person in the store on the date of the incident.

An 11-second video showing defendant as he walked out of the store was admitted into evidence and played for the jury. The video depicted the moment he raised his shirt, exposing the handle of an alleged gun as he made the statement to C.S. Defendant's back faced the camera, but C.S. could see the front of his body.

After the incident, C.S. spoke with law enforcement. They showed her a photo lineup a few hours later, but she was unable to make an identification. At the preliminary hearing, C.S. identified defendant by the shape of his eyes and tattoos.

## DISCUSSION

Defendant contends his conviction for criminal threats (§ 422, subd. (a)) must be reversed because there is insufficient evidence to establish that C.S. suffered sustained fear. We disagree.

### A. Applicable Law

#### 1. Sufficiency of the Evidence

In reviewing the sufficiency of the evidence, " 'we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507.) "We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence." (*People v. Medina* (2009) 46 Cal.4th 913, 919.) "The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*Cravens*, at p. 508.) The reviewing court "neither reweigh[s] the evidence nor reevaluate[s] the credibility of the witnesses." (*People v. Mohamed* (2011) 201 Cal.App.4th 515, 521.)

#### 2. Criminal Threats

Section 422, subdivision (a) provides that, "[a]ny person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with

4.

the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished ….."

Our Supreme Court has explained section 422's requirements in terms of five elements: "The prosecution must prove '(1) that the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person," (2) that the defendant made the threat "with the specific intent that the statement … is to be taken as a threat, even if there is no intent of actually carrying it out," (3) that the threat … was "on its face and under the circumstances in which it [was] made, … so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.' " (*In re George T.* (2004) 33 Cal.4th 620, 630.)

### a. Sustained Fear

Regarding the fourth element, section 422 "requires that the threat be such as to cause a reasonable person to be in *sustained fear* for his personal safety. The statute is specific as to what actions and reactions fall within its definition of a [criminal] threat. The phrase to 'cause[ ] that person reasonably to be in sustained fear for his or her own safety' has a subjective and an objective component. A victim must actually be in sustained fear, and the sustained fear must also be reasonable under the circumstances." *In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1139–1140 (*Ricky T.*).) "Sustained fear" is

defined by "a period of time that extends beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156 (*Allen*).)

A line of cases illustrate a range of statements that have been found to support a finding that the victim suffered sustained fear. In *Allen*, the defendant had previously assaulted and stalked the victim's daughter, and broke into the daughter's apartment. (*Allen*, *supra*, 33 Cal.App.4th at pp. 1151–1153.) On the day of the incident, the victim saw the defendant pass by her house several times and then saw him talking to someone near her back door. (*Id*. at p. 1154.) When the victim approached the door, the defendant started cussing at her and told her, " 'I'm gonna kill you. I'm gonna kill you and your daughter.' " While making the statement, he took out a gun and pointed it at the victim. (*Ibid*.) The victim called 911, but the defendant left before police arrived. (*Ibid*.) The victim saw that police took the defendant into custody about 15 minutes later. (*Ibid*.) He was charged and convicted with making a criminal threat against her. (*Id*. at p. 1151.)

On appeal, the defendant argued the victim did not suffer sustained fear because he was arrested within 15 minutes. (*Allen*, *supra*, 33 Cal.App.4th at p. 1155.) The court in *Allen* held that the victim's knowledge of the defendant's prior conduct was relevant to establish a state of sustained fear, and that "[f]ifteen minutes of fear of a defendant who is armed, mobile, and at large, and who has threatened to kill the victim and her daughter, is more than sufficient to constitute 'sustained' fear for purposes of this element of section 422." (*Id*. at p. 1156.)

In *Ricky T*., a high school student left his classroom to use the restroom. (*Ricky T.*, *supra*, 87 Cal.App.4th at p. 1135.) When he returned, he found the door locked and pounded on it. (*Ibid*.) The teacher opened the door and accidentally hit him. The student became angry, cursed the teacher, and threatened him, saying " 'I'm going to get you.' " (*Ibid*.) He also admitted telling the teacher he was " 'going to kick [his] ass.' " (*Id*. at p. 1136.) However, he did not make any physical movements or gestures. (*Ibid*.) The teacher felt threatened, even though he acknowledged the student did not make any

6.

specific threats. (*Id*. at p. 1135.) As a result, he sent him to the front office and the student complied. (*Ibid*.) The police were called the next day and the student was later found to have violated section 422. (*Ibid*.) On appeal, the court held the evidence was insufficient to support the conviction because the teacher's fear was fleeting and the statement "was an emotional response to an accident rather than a death threat that induced sustained fear." (*Id*. at p. 1141.) While the teacher stated he felt threatened, the court found his fear "did not exist beyond the moments of the encounter" because the statements were not accompanied by a show of force or violence, the student followed the teacher's directive to go to the front office, and the police were not notified until the next day. (*Id*. at p. 1140.)

In *People v. Fierro* (2010) 180 Cal.App.4th 1342, 1344–1345 (*Fierro*), the victim and his son were at a gas station where he asked the defendant to move his car several times because he was blocking the pumps. After exchanging words, the defendant drove away but circled back around to confront the victim. (*Id*. at p. 1345.) He walked up to the victim who was already in his car and lifted up his shirt, revealing a weapon in his waistband and began cussing at the victim and his son. (*Id*. at pp. 1345–1346.) The defendant told him, " 'I ought to kill you and' … 'the stupid mother f[***]er too.' " (*Id*. at p. 1346.) He said he ought to kill them " 'right now.' " (*Ibid*.) The defendant exposed the weapon for approximately a minute. (*Id*. at p. 1348.) He then told the victim to leave. (*Id*. at p. 1346.) The victim drove away and within 15 minutes reached a safe place, called 911, and told the operator he was scared " 'scared shitless.' " (*Ibid*.)

The court in *Fierro* held the defendant's threat caused sustained fear, concluding "that the minute during which [the victim] heard the threat and saw [the defendant's] weapon qualifies as 'sustained' under the statute. When one believes he is about to die, a minute is longer than 'momentary, fleeting, or transitory.' " (*Fierro*, *supra*, 180 Cal.App.4th at p. 1349.) The court stated the facts differed "sharply" from those in *Ricky T.*, explaining that the defendant in *Ricky T.* "made no physical movements or gestures.

7.

The teacher responded by sending the student to the school office; the teacher did not call the police until the next day; and there had been no prior history between defendant and the victim." (*Ibid*.)

**B. Analysis**

Defendant argues this case is similar to *Ricky T.* because there is no evidence C.S.'s fear lasted beyond the moment of the encounter. The facts of this case differ substantially from those of *Ricky T.*

In the present case, C.S. confronted defendant and asked him to pay for the merchandise as he walked out of the store. He responded by lifting his shirt and exposing what appeared to be a handgun and threatened to "f[***]ing shoot her" while he was approximately three feet away from her. (See *Fierro*, *supra*, 180 Cal.App.4th at pp. 1345–1346 [there was substantial evidence the victim felt sustained fear when he heard someone say, " 'I ought to kill you' … 'right now,' " coupled with seeing a weapon].) When he left, C.S. immediately called the police. (See *Ricky T.*, *supra*, 87 Cal.App.4th at p. 1140 [evidence that "police were not notified until the day after the incident" shows the victim was not in sustained fear]; see also *People v. Melhado* (1998) 60 Cal.App.4th 1529, 1538 [calls to the police are evidence the victim is in fear of his or her safety].) She testified she felt shocked, scared, and angry. She feared for her safety and felt he would follow through with his threat. Defendant's threat that he was going to "f[***]ing shoot" C.S. while brandishing an alleged weapon is not similar to the angry utterances of an adolescent like in *Ricky T.*, where the student did not make any specific threat and "there was no evidence offered that [the student's] words were accompanied by any show of physical violence—nothing indicating any pushing or shoving or other close-up physical confrontation." (*Ricky T.*, at p. 1138.) To the extent the confrontation lasted only 11 seconds, there is no minimum amount of time an incident must last before the victim may experience sustained fear. (See *Allen*, *supra*, 33 Cal.App.4th at p. 1156 & fn. 6.)

Accordingly, we conclude there is sufficient evidence that C.S. suffered sustained fear.

## <u>DISPOSITION</u>

The judgment is affirmed.