Filed 12/23/22  P. v. Safa CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>FARZAD SAFA,<br><br>          Defendant and Appellant. | A164975<br><br>(Sonoma County<br>Super. Ct. No. SCR-748749-1) |

Defendant Farzad Safa appeals his conviction, challenging only two of the five counts on which the jury found him guilty. He contends that his conviction for making criminal threats (Pen. Code,[1] § 422) is not supported by substantial evidence and that the court erred in failing sua sponte to instruct on a lesser included offense. He also contends that he was prejudiced by the consolidation of that charge and the charge of assault with a nonfirearm deadly weapon, a sports utility vehicle (SUV) (§ 245, subd. (a)(1)), with a misdemeanor charge of battery. We find no error and shall affirm.

**Factual and Procedural History**

In 2021 defendant lived in the same condominium complex as Michael Kennedy, Barry Corigliano, and Patrick Hawken. Kennedy and Hawken each testified that, starting sometime before May 2021, defendant often acted

---

[1] All statutory references are to the Penal Code.

1

erratically and verbally abused and intimidated them and other residents of the complex. On one evening in May, Kennedy took a walk with his girlfriend, Ellen DeProto. When they stopped in an outdoor common area to speak with a neighbor, DeProto saw defendant walk toward Kennedy without breaking stride and, as Kennedy began to turn toward him, punch him in the mouth. Defendant agitatedly asked, "Who do you have coming after me?" and said, "You can't be over here. You can't be on this side of the complex. Don't show your face around here." He then "ran off." Kennedy suffered a "small injury" to his mouth. Soon thereafter, the district attorney filed a misdemeanor complaint charging defendant with one count of battery (§ 242).

Three months later, on August 21, 2021, defendant drove by Kennedy and his neighbor Corigliano as the two were chatting at an interior roadway in the complex. Defendant turned his SUV around and drove back toward the men, at a speed Kennedy estimated at 35 to 40 miles per hour and Corigliano at 55 miles per hour. Defendant stopped just short of them—within 10 feet (Corigliano's estimate) or one to one and a half feet (Kennedy's estimate). Defendant exited the SUV and charged at Kennedy with a raised fist. Corigliano pushed him away and, after an exchange of words, defendant drove away.[2]

Five days later, while going for his mail around 9:00 p.m., Hawken observed defendant harassing two elderly women. Hawken called the police. When Santa Rose Police Officer Erick Arango-Nunez arrived, Hawken pointed out defendant, who got in his SUV and locked the doors. The officer tried to speak with him, but defendant turned up his radio and rolled up his

---

[2] Corigliano also testified that, in an uncharged incident a "couple days" later, he took out his trash and saw defendant racing through the parking lot. Defendant "floor[ed] it" toward Corigliano, making him jump out of the way. The SUV, which he felt was going to hit him, passed within three or four feet.

windows. After a second officer arrived, the two decided to de-escalate the situation by leaving.

Hawken got his mail and began walking back to his condominium. En route, defendant pulled up to him in his SUV, yelling profanities, and said, "[W]ait right here. I got something in the house that will end you"; he then drove off. Hawken felt terrified. He had previously seen defendant with a high-powered pellet gun, knew that he owned "non-firearm stuff that could really do some damage," and had heard rumors that he owned guns. Hawken believed that defendant planned to get a weapon, and he feared that defendant would hurt or kill him. He was also concerned about the safety of his 12-year-old son.

Hawken walked directly back to his condominium, locked the door, and called Officer Arango-Nunez. He and the officer had two separate, recorded conversations, each of which the jury heard. After listening to the recordings, Hawken testified that, in the first call, he felt "[f]rantic, to say the least" and "[v]ery shaken." During the second call, he was "frazzled, emotionally, physically shaking"; he described his voice on the recording as "really, really shaky," which he attributed at trial to "fear."

Officer Arango-Nunez, who learned that defendant had outstanding misdemeanor arrest warrants, returned to the complex with the other officer. They found defendant in his SUV and said they were going to arrest him. Defendant refused to leave the SUV; eventually, the officers removed him forcibly. In the SUV they found two guns, one loaded and one disassembled.

The district attorney then filed a second complaint, ultimately charging defendant with three felonies—assault with a deadly weapon (the SUV)

(§ 245, subd. (a)(1)),[3] making criminal threats (§ 422, subd. (a)), and carrying a loaded, unregistered firearm in public (§ 25850, subds. (a) & (c)(6))—and one misdemeanor count of resisting a peace officer (§ 148, subd. (a)(1)). The district attorney later moved to consolidate the second complaint with the earlier misdemeanor battery complaint, contending that they involved "offenses of the same class of crime" that were "connected together in their commission" by shared evidence. Over opposition, the court granted the motion, and the district attorney filed an amended information combining all five counts.

The case proceeded to a two-day trial at which Kennedy, Corigliano, DeProto, and Hawken testified. After the prosecution rested, defendant moved for acquittal (§ 1118.1) on the criminal-threat count, contending that the prosecution had not offered substantial evidence of the element of sustained fear. The court denied the motion.

The jury found defendant guilty on all five counts. The court sentenced him to an aggregate prison term of four years and four months.[4] Defendant timely appealed.

---

[3] The operative pleading alleged that defendant committed the crime on or about August 21, the day of the incident involving both Kennedy and Corigliano. At trial, a unanimity instruction told the jury that they could find him guilty of assault with a deadly weapon based only on his conduct on that date, not based on conduct on any other day.

[4] The sentence comprises a three-year middle term on the primary count, assault with a deadly weapon; consecutive sentences of one-third of the middle term, or eight months each, on the criminal-threat and firearm counts; and concurrent sentences, each of six months, on the misdemeanor counts of resisting a peace officer and battery.

## Discussion

### 1. The Criminal Threat

The elements of the section 422, subdivision (a) offense are (1) willfully threatening to commit a crime that would cause death or great bodily injury (2) with a specific intent that one's words be taken as a threat (3) in terms so unequivocal, unconditional, immediate, and specific as to convey a gravity of purpose and immediate prospect of execution, causing the victim to experience fear for their own or an immediate family member's safety that is (4) sustained and (5) reasonable in the circumstances. (*People v. Toledo* (2001) 26 Cal.4th 221, 227–228.)

Defendant contends the prosecution failed to offer substantial evidence of only the "sustained fear" element of the offense, and that the trial court erred in failing to instruct sua sponte on the lesser included offense of attempted criminal threat.

To assess the sufficiency of the evidence, we review " 'the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Maciel* (2013) 57 Cal.4th 482, 514–515.) Even if the evidence can "be reasonably reconciled with a contrary finding," we must affirm so long as any rational trier of fact could have found the defendant guilty. (*People v. Wear* (2020) 44 Cal.App.5th 1007, 1019.)

Fear is "sustained" if it lasts for a time that "extends beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156; accord, *People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349.)

5

Defendant does not question that Hawken was reasonably placed in fear[5] but contends there is no evidence that his fear was sustained because there is no testimony quantifying how long he remained in fear. But Hawken testified that, after defendant told him to "wait right here. I got something in the house that will end you," he walked home, locked his door, and called the police. During the first call he felt "[f]rantic, to say the least" and "[v]ery shaken." During the second call he was still feeling "frazzled" and "physically shaking," while speaking in a "really shaky" voice that he attributed to "fear." Regardless of the number of minutes that elapsed, this evidence amply supports a finding that Hawken's fear was not "momentary, fleeting, or transitory."

Defendant likens this case to *In re Ricky T.* (2001) 87 Cal.App.4th 1132, in which this court held that a juvenile court erred in finding that a high school student caused "sustained fear" when he reacted to a teacher accidentally hitting him with a classroom door by "getting in [his] face" and saying, "I'm going to get you" (*id.* at p. 1135). The teacher promptly told the student to go to the office, which he did. The student was suspended, and no one called the police until the next day. (*Id.* at pp. 1135–1136.) While the teacher "said he felt physically threatened" (*id.* at p. 1135), we noted that "[w]hatever emotion—fear, intimidation, or apprehension—[the teacher] felt during the moment of the verbal encounter, there was nothing to indicate that the fear was more than fleeting or transitory" (*id.* at p. 1140). We

---

[5] Although defendant did not visibly possess a weapon while making the threat, as did the defendants in two cases cited by the Attorney General, which defendant attempts to distinguish on that basis (*People v. Allen*, *supra*, 33 Cal.App.4th at p. 1156; *People v. Fierro*, *supra*, 180 Cal.App.4th at p. 1349), Hawken understood that defendant was going to his nearby home to retrieve one, which was sufficient to place him in fear.

rejected the contention that "even momentary fear can support a finding of sustained fear within the meaning of section 422" because it would make the statutory term "sustained" superfluous. (*Ibid.*) Here, in contrast, Hawken did testify to experiencing fear as he returned home following the threat and during his two calls to the police. *Ricky T.* is plainly distinguishable.

Defendant's alternative contention is that even if the evidence of sustained fear was substantial, the trial court should have instructed sua sponte on the lesser included offense of attempted criminal threat. A defendant is guilty of that crime if he makes a comment that satisfies every element of a criminal threat except that it fails to cause sustained fear. (*People v. Toledo, supra*, 26 Cal.4th at p. 231.)

Such an instruction should have been given if the record reveals substantial evidence " 'from which a jury composed of reasonable persons could conclude "that the lesser offense, but not the greater, was committed." ' " (*People v. Wilson* (2021) 11 Cal.5th 259, 298; *People v. Breverman* (1998) 19 Cal.4th 142, 177.) Here, defendant cites no evidence that Hawken's fear was momentary, fleeting, or transitory. (*People v. Allen, supra*, 33 Cal.App.4th at p. 1156.) To the contrary, as just indicated, the uncontradicted evidence was that he remained fearful at least through the two calls he made to the police. Therefore, there was no basis for the court to instruct sua sponte on a lesser included offense.

### 2. *Consolidation*

A court may consolidate accusatory pleadings that allege offenses "connected together in their commission" or "of the same class of crimes." (§ 954; *People v. Soper* (2009) 45 Cal.4th 759, 769 & fn. 2 (*Soper*).) To avoid duplicative trials, joinder " 'is the course of action preferred by the law.' " (*Soper, supra*, at p. 772.) On appeal, we assess whether, given the showings made and facts known when the trial court ruled, its decision was "outside

the bounds of reason," and whether defendant has made a "clear showing of prejudice." (*People v. Merriman* (2014) 60 Cal.4th 1, 37.) But " '[e]ven if a . . . joinder ruling is correct [when] made, a reviewing court must reverse the judgment if the "defendant shows that joinder actually resulted in 'gross unfairness' amounting to a denial of due process." ' " (*People v. Macklem* (2007) 149 Cal.App.4th 674, 698; accord, *Soper*, *supra*, at p. 783.) Whether the actual trial was so grossly unfair as to deny due process is a mixed question of law and fact that is predominantly legal; this court reviews such issues de novo. (*People v. Aguilera* (2020) 50 Cal.App.5th 894, 908–909.) However, a defendant's burden of persuasion on a claim of gross unfairness is heavy. (*Soper*, *supra*, at p. 783.)

As defendant concedes, the battery alleged in the misdemeanor case is of the same class—crimes of violence—as the assault with a deadly weapon and criminal threat, making joinder permissible. But a court may still deny joinder in such a case in the interest of justice. (*Williams v. Superior Court* (1984) 36 Cal.3d 441, 447, abrogated in part on other grounds by statute as stated in *Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1229, fn. 19.) Defendant contends that the court's failure to do so here was a clear abuse of discretion, as it created a risk of prejudice due to the "spillover effect" that inflammatory evidence on the battery count was likely to have on the assault and threat counts, and that this spillover effect did in fact occur, making the trial so grossly unfair as to deny him due process.

A spillover effect occurs if the evidence on two or more charges is not cross-admissible, so that evidence of each count would not be admissible at a trial of the other, and if a jury not otherwise unconvinced of a defendant's guilt on some charges "might permit the knowledge of defendant's other criminal activity to tip the balance" in favor of conviction. (*People v. Armstrong* (2016)

1 Cal.5th 432, 455.) If all evidence of the joined offenses would be cross-admissible, their joinder cannot be prejudicial. (*People v. Merriman*, *supra*, 60 Cal.4th at pp. 44–45.)[6]

Assuming non-cross-admissibility, two factors are relevant to determine whether discretion has been abused: "(1) whether some of the charges are particularly likely to inflame the jury against the defendant [and] (2) whether a weak case has been joined with a strong case or another weak case so that the totality of the evidence may alter the outcome as to some or all of the charges." (*Soper, supra*, 45 Cal.4th at p. 775.)

Neither factor supports defendant's contention here, whether viewing the record at the time of the joinder ruling or viewing the trial retrospectively. Defendant's act of punching Kennedy was if anything less inflammatory than the alleged conduct underlying the felony counts—an assault by driving at high speed towards Kennedy and Corigliano, and threatening to "end" Hawken after retrieving apparently a weapon from his home.

Defendant contends that evidence of the punch suggested a "propensity for violence" that bolstered the assault and threat charges which he depicts as weak cases. He deems the assault charge weak because there is little evidence that he "intended" to assault Kennedy and Corigliano with his SUV,

---

[6] The Attorney General contends that defendant has forfeited the issue of cross-admissibility by not addressing it in his opening brief. While defendant did not make an express argument as to why evidence of the punch would not have been admissible at a trial limited to the assault and threat counts, his brief did note the need to establish non-cross-admissibility and did convey his theory as to why the evidence was not cross admissible: namely, in a trial of only the threat and assault counts, evidence of the punch would have been excluded as improper character evidence showing a propensity for violence. For present purposes we shall assume that the evidence was not cross-admissible and resolve the prejudice issue on its merits.

but assault with a deadly weapon has no intent element. The offense requires a willful act but, as explained by the unchallenged, standard jury instruction that defined the offense at trial, one "commits an act willfully when he or she does it willingly or on purpose"; it is "not required that he or she intend to . . . hurt someone." (CALCRIM No. 875.)

Nor, contrary to defendant's contention, was the evidence that he previously punched Kennedy likely to have influenced the jury's evaluation of Kennedy's testimony that defendant stopped the SUV one foot short of him in contrast to Corigliano's estimate of 10 feet. Indeed, in his closing argument, defense counsel tacitly conceded that defendant drove toward Kennedy and Corigliano at high speed and stopped some distance short of them. The only disputed elements were whether his driving was an act that "by its nature would directly and probably result in the application of force," and whether he knew of "facts that would lead a reasonable person to realize" as much. Evidence that he punched Kennedy three months earlier had no bearing on either issue.

Similarly, there is no basis to conclude that evidence of the prior assault on Kennedy had any effect on the jury's evaluation of whether the fear Hawken experienced as the result of defendant's threat was sustained. Indeed, there is no evidence that Hawken even knew of the prior assault. Moreover, any such knowledge would tend to go only to the issue of whether Hawken's fear was genuine and reasonable, elements that defendant did not dispute.

In short, defendant has failed to sustain the heavy burden of showing that consolidating the misdemeanor battery charge with the charged felonies rendered his trial so grossly unfair as to amount to a denial of due process. (*Soper*, *supra*, 45 Cal.4th at p. 783.)

## Disposition

The judgment is affirmed.

POLLAK, P. J.

WE CONCUR:

STREETER, J.
BROWN, J.