Filed 3/14/24  P. v. Zuniga CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARTIN SOTO ZUNIGA,<br><br>    Defendant and Appellant. | D082755<br><br><br>(Super. Ct. No. RIF1902333) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Timothy J. Hollenhorst, Judge.  Affirmed.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Arlene A. Sevidal and Collette Cavalier, Deputy Attorneys General for Plaintiff and Respondent.

Defendant Martin Soto Zuniga had a fraught relationship with his neighbors, Erik H., his wife and their three children. On one occasion, after Erik witnessed a rock crash through their glass window and heard Zuniga yelling, he called police. A few weeks later, as Erik and a friend were leaving their house through a back alley, Zuniga partially blocked the path, then pulled out a firearm and threatened to shoot them. Erik called the police, who ultimately arrested Zuniga. A jury found him guilty of two felony counts of making a criminal threat (Pen. Code,[1] § 422; counts 1 & 2) and one count of brandishing an imitation firearm (§ 417.4; count 3).

On appeal, Zuniga challenges the judgment of conviction on four grounds. He asserts: (1) there was insufficient evidence to support the elements of making a criminal threat; (2) the court should have instructed the jury sua sponte on attempted criminal threat as a lesser included offense; (3) the court erred in admitting statements Zuniga made to the police; and, (4) cumulative errors violated Zuniga's due process rights. We reject these contentions and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGOUND

Erik testified about a rock throwing incident that occurred a few weeks before the confrontation in the alley. While Erik and his family were home, a rock came through a glass window facing Zuniga's residence. When Erik went outside to investigate, he heard Zuniga "yelling crap and gibberish" from Zuniga's yard. Erik called the police.

Erik further explained that a few weeks later, on May 27, 2019, his friend, Jorge F. was helping him with a project. When they needed supplies,

---

[1]    Further undesignated statutory references are to the Penal Code.

Jorge agreed to drive the pair to a nearby store. As they drove down the alleyway behind Erik's home, they encountered Zuniga on foot. It was too narrow for two cars side-by-side, and Zuniga blocked the middle of the alley.

Jorge slowed the car, beeped his horn, and moved towards the wall trying to go around Zuniga. According to both Erik and Jorge, Zuniga pulled a gun from his clothing and, in an aggressive tone, stated he would " 'kill everybody,' " " 'shoot all,' " or something to that effect.

Zuniga explained that he believed Jorge and Erik intended to hit him with the car so he jumped aside and lifted his shirt. He denied both making any verbal threat or having a gun on his person on the day of the incident. He admitted that he *did* have a pellet gun before the incident, but claimed he had "thrown it away the day before." He explained that he lifted his shirt to make Erik and Jorge "believe that [he] had something on [him]."

This interaction made Jorge feel "actually scared" and caused Erik to feel "[c]oncerned and scared" that his life was in jeopardy. In response, Jorge "sped to the intersection" and made a left turn without checking for cross-traffic. Erik "knew [Zuniga's] history" and they left to avoid "risk[ing] it."[2] In contrast, Zuniga testified that after the encounter, Jorge backed down the alleyway back towards the house instead of trying to pass by him.

After Jorge stopped the car, Erik asked him whether it was a gun Zuniga pointed at them. After Jorge responded in the affirmative, Erik called the police "because it was, obviously, an emergency." Erik and Jorge completed their errand and spoke with two responding police officers when they returned to Erik's home.

---

[2] Detective Walker interviewed Erik after the incident. He testified Erik initially reported that Jorge waited until traffic cleared before turning left. Erik also said he did not call for police until they stopped at a traffic signal.

Corona Police Officer Banuelos attempted to contact Zuniga at his home the day after the incident. It took nearly an hour for Zuniga to emerge from the house, and Banuelos then placed him in the back of the patrol car. Concerned about Erik's report of a gun being involved, Banuelos inquired where Zuniga's firearm was. Zuniga responded that he threw it out by the bushes on a public street. Banuelos took Zuniga to the location but did not find a firearm. Detective Walker confirmed that the police never recovered any firearm, bullet, or casings.

Banuelos transported Zuniga to an interview room inside the Corona jail, where Zuniga stated he remembered his neighbor in a car coming down the alley and that this neighbor was out to kill him. He told the officer that the men "had killed his wife." This, Zuniga claimed, prompted him to carry a "fake gun in his waistband." He admitted to showing Erik and Jorge a gun, but denied pointing it at them and again admitted to disposing of the " 'pellet gun.' "

## DISCUSSION

### A. *Criminal Threat*

The elements of a section 422 violation are: (1) defendant willfully threatened to commit a crime that would result in death or great bodily injury to another person; (2) he made the threat with the specific intent that it be taken as a threat (whether or not he actually intended to carry out the threat); (3) the threat, on its face and under the circumstances in which it was made, was so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat; (4) the threat caused the person threatened reasonably to be in sustained fear for his or her own safety;

4

and (5) the threatened person's fear was reasonable under the circumstances. (*People v. Toledo* (2001) 26 Cal.4th 221, 227–228 (*Toledo*); see also § 422.)

The element of sustained fear "requires proof of a mental element in the victim" (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156 (*Allen*)) and has both a subjective and objective component. (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140.) "A victim must actually be in sustained fear, and the sustained fear must also be reasonable under the circumstances." (*Ibid*.) The jury must consider the communication and the surrounding circumstances together, including a prior relationship between the defendant and the victim. (*People v. Wilson* (2010) 186 Cal.App.4th 789, 814; *People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340.)

Here, Zuniga challenges only the fourth element of the criminal threat convictions—i.e., that his threat actually caused Erik and Jorge to be in sustained fear for their safety. That element looks to the victim's state of mind in response to the defendant's threat. (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349 (*Fierro*).) The term "sustained" as it is used in section 422 means " 'a period of time that extends beyond what is momentary, fleeting, or transitory.' " (*Id*. at p. 1349.) No specific amount of time is required to render a victim's fear "sustained." (*Allen, supra*, 33 Cal.App.4th at p. 1156, fn. 6.) Case law has characterized a victim's fear as sufficiently sustained within the meaning of section 422 when the fear lasts anywhere between one and 15 minutes. (See *Fierro,* at p. 1349 [one minute sufficient to qualify as sustained fear when a defendant threatens to kill a victim with a visible weapon]; *Allen*, at p. 1156 [Fifteen minutes sufficient to qualify as sustained fear].) Calls to the police are evidence that a victim is in fear of the defendant. (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1538.)

5

Substantial evidence supports the jury's finding that both Erik and Jorge were in sustained fear after Zuniga's threat.  Erik already believed Zuniga threw a rock through his window and had called the police about his concerns.  Within weeks, his neighbor threatened to kill or shoot him with a visible weapon.  Erik and Jorge believed the gun was real and that they were in danger.  They testified at trial that they were fearful.  They drove past Zuniga when they were able and turned left without checking for oncoming traffic.  Their fear prompted them to call the police within minutes of their interaction when they were no longer confined in the alley.  These facts, considered together, constitute substantial evidence that both Erik and Jorge were in actual sustained fear following Zuniga's threat.

**B.** *Attempted Criminal Threat*

Zuniga also contends the court had a sua sponte obligation to instruct on attempted criminal threat as a lesser included offense. " ' "[A] trial court must instruct on lesser included offenses, even in the absence of a request, whenever there is substantial evidence raising a question as to whether all of the elements of the charged offense are present." ' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1215.)  " ' "Substantial evidence is evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive." ' " (*Ibid.*)  The reviewing court applies the independent judgment standard of review to the trial court's failure to instruct on a lesser included offense.  (*People v. Waidla* (2000) 22 Cal.4th 690, 739.)

The crime of attempted criminal threat is a lesser included offense of the crime of making a criminal threat.  (*Toledo, supra*, 26 Cal.4th at p. 230.) "[I]f a defendant, . . . acting with the requisite intent, make a sufficient threat that is received and understood by the threatened person, but, for whatever

6

reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear, the defendant properly may be found to have committed the offense of attempted criminal threat." (*Id.* at p. 231.) In these situations, "only a *fortuity*, not intended by the defendant, has prevented the defendant from perpetrating the completed offense of criminal threat itself." (*Ibid.*, italics added.)

As we have noted, here there is substantial evidence—specifically testimony from both Erik and Jorge—that they were *actually* in sustained fear after Zuniga's threats. There was no intervening fortuity that prevented them from being fearful. In this way, the facts of this case are materially different than those in *Toledo*, where the victim reported her fear to an investigator but later testified that she was not actually frightened. (*Toledo, supra*, 26 Cal.4th at p. 225.) Under those circumstances in *Toledo*, the attempt instruction was appropriate because there was substantial evidence that the victim was not in sustained fear. Here, Erik and Jorge were consistent in their call to 911, their interactions with the police, and in their testimony at trial. Accordingly, all the evidence indicated the criminal threats were made, and there was no substantial evidence to merit a jury instruction on mere attempt.

## C.    *Statements to the Police*

After being placed in the back of a patrol car and before receiving any *Miranda* warning, Officer Banuelos questioned Zuniga about the location of the gun that Erik and Jorge reported seeing. Zuniga said he had thrown the gun into some bushes. Before trial, Zuniga moved to exclude the statements, claiming they were obtained in violation of his *Miranda* rights. (See generally *Miranda v. Arizona* (1966) 384 U.S. 436.) Relying on *New York v.*

*Quarles* (1984) 467 U.S. 649 (*Quarles*), the trial court denied the motion, reasoning that the need to locate an abandoned firearm qualified as an emergency under the public safety exception to *Miranda.* (*Quarles,* at pp. 655–656.) On appeal, Zuniga renews his arguments for excluding the statements he made to Officer Banuelos while confined in the back of the police car.

In *Quarles*, the United States Supreme Court recognized that "in a situation posing a threat to the public safety," "the need for answers to questions . . . outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." (*Quarles, supra,* 467 U.S. at p. 657.) The public safety exception avoids "plac[ing] officers . . . in the untenable position of having to consider . . . whether it best serves society for them to ask the necessary questions without the *Miranda* warnings and render whatever probative evidence they uncover inadmissible." (*Id*. at pp. 657–658.) Zuniga contends that the *Quarles* exception does not apply here because there was no public safety concern, given that the search took place a day after Zuniga disposed of the firearm and that, according to Zuniga, the firearm was a toy.

Erik and Jorge reported to the police that Zuniga threatened them with a firearm; they did not report believing it was a toy gun, a pellet gun, or a BB gun. Officer Banuelos arrived to investigate that report and at the outset sought to determine where the firearm was located. Even assuming Zuniga claimed it was a "toy gun" in his initial statements, Banuelos had no reason to *know* the firearm was an imitation firearm and had two witnesses who believed it was real. Notably, Banuelos did not learn the details of how Zuniga acquired the gun until after they arrived at the police station. When initially placed in custody, Zuniga did not have the gun on his person

8

and had given permission to search his home for the weapon.  Then, Zuniga admitted to abandoning the gun in a place where anyone could happen upon it.  As such, Officer Banuelos was "confronted with the immediate necessity of ascertaining the whereabouts of a gun which [he] had every reason to believe [Zuniga] had . . . discarded." (*Quarles, supra,* 467 U.S. at p. 657.)  Accordingly, we conclude the statements Zuniga made in the patrol car regarding the firearm fell squarely within the *Quarles* "public safety" exception.[3]

Finally, having found no error, we do not consider Zuniga's claims of cumulative error.  (See *People v. Martinez* (2003) 31 Cal.4th 673, 704.)

### DISPOSITION

The judgment is affirmed.

DATO, Acting P. J.

WE CONCUR:

KELETY, J.

CASTILLO, J.

---

[3]     In light of our conclusion that Zuniga's pre-*Miranda* statements in the patrol car were properly admitted, we need not consider his argument that his post-*Miranda* statements at the police station should be excluded as the "fruit of the poisonous tree."